UNITED STATES OF AMERICA

IN THE WESTERN DISTRICT OF MICHIGAN

United States of America,                          File No. 1:18-cr-166
     Plaintiff,

     v.                                            Hon. Paul L. Maloney
                                     U.S. District Court Judge

Daniel Dario Trevino (D-1)
     Defendant.
_____/

| | |
|---|---|
| Joel S. Fauson | J. Nicholas Bostic P40653 |
| Assistant United States Attorney | Attorney for Defendant Trevino |
| P.O. Box 208 | 909 N. Washington Ave. |
| Grand Rapids, MI 49501-0208 | Lansing, MI 48906 |
| 616-456-2404 | 517-706-0132 |

_____/

**DEFENDANT DANIEL TREVINO'S (D-1) CORRECTED MOTION TO SUPPRESS #1**
**(Search of 6701 Old 28th Street in 2013)**
(editing error on page 18)

**Oral argument requested**

**Certificate of service**

Defendant Daniel Trevino (D-1) hereby moves for an order suppressing evidence seized from 6701 Old 28th Street, Grand Rapids, Michigan on October 30, 2013 based upon violations of the Fourth Amendment as described in the attached brief which is incorporated herein by reference.

8/23/2018                          */s/ J. Nicholas Bostic*
                                     By: J. Nicholas Bostic P40653
                                     Attorney for Defendant Trevino
                                     909 N. Washington Ave.
                                     Lansing, MI 48906
                                     517-706-0132

## TABLE OF CONTENTS

Table of Authorities ............................................................................................. iii

Statement of Questions Presented........................................................................ vi

Statement of Facts ................................................................................................. 1

Argument ............................................................................................................... 1

I.  Stale information ............................................................................................. 1

II. No information that additional evidence or contraband was present ................................... 5

III. Good faith reliance does not apply ..................................................................... 14

Relief Requested .................................................................................................. 19

Certificate of service ........................................................................................... 19

# TABLE OF AUTHORITIES

Constitutional Provisions

United States Constitution, Fourth Amendment........................................................................1

Supreme Court of the United States

*Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)..............12

*Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) .......................1

*Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004)...........................17

*Marron v. United States*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927) ...........................12

*Sgro v United States*, 287 US 206; 53 SCt 138; 77 LEd 260 (1932) ...................................3, 4

*Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 512, 13 L.Ed.2d 431 (1965).................12

*United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) .......................4

*United States v. Leon*, 468 U.S. 897, 104 SCt 3405, 82 LEd2d 677 (1984)..........14, 15, 17, 18

*United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) .......................5

*Universal Health Services, Inc., v. United States*, __ U.S. __, 136 S.Ct. 1989,
    195 L.Ed.2d 348 (2016)........................................................................10

*West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) .....................................8

*Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978) ...................1

Sixth Circuit Court of Appeals

*Baranski v. Fifteen Unknown Agents of the Bureau of*
    *Alcohol, Tobacco and Firearms*, 452 F.3d 433 (6th Cir.2006)...................................12, 13

*Miami County Municipal Court v. Wright*, 963 F.2d 876 (6th Cir. 1992)................................8

*United States v. Abernathy*, 843 F.3d 243 (6th Cir. 2016) ...................................................17

*United States v. Boyd*, 422 F2d 791 (6th Cir. 1970) .................................................................3

*United States v. Carpenter*, 360 F.3d 591 (6th Cir. 2004) .......................................................16

*United States v. Finch,* 998 F.2d 349 (6th Cir. 1993)...........................................................13

*United States v. Frazier*, 423 F.3d 526 (6th Cir.2005)......................................................14, 16

*United States v. Frechette*, 583 F3d 374 (6th Cir. 2009) ...............................................2

*United States v. Hython*, 443 F3d 480 (6th Cir. 2006) .........................................................3, 4

*United States v. Laughton*, 409 F3d 744 (6th Cir. 2005) ......................................................16

*United States v. McManus*, 719 F.2d 1395 (6th Cir. 1983) ....................................................1

*United States v. Savoca*, 761 F.2d 292 (6th Cir.1985) ...........................................................11

*United States v. Schultz*, 14 F.3d 1093 (6th Cir. 1994)..............................................10, 11, 16

*United States v. Weaver*, 99 F3d 1372 (6th Cir. 1996) ..........................................................16

*United States v. Williams*, 224 F.3d 530 (6th Cir. 2000) .......................................................16

Michigan Supreme Court

*People v. McQueen*, 493 Mich. 135, 828 N.W.2d 644 (2013)............................................8, 15

Michigan Court of Appeals

*People v. McQueen*, 293 Mich. App. 644, 811 N.W.2d 513 (2011).............................8, 10, 15

Other Courts

*Cassady v. Goering*, 567 F.3d 628 (10th Cir. 2009)..........................................................11, 12

*Jones v. U.S. Drug Enforcement Administration*, 801 F.Supp. 15 (M.D. Tenn. 1992) ...........7

*United States v. Corrigan*, 809 F.Supp. 567 (M.D. Tenn. 1992) ...........................................18

*United States v. Galpin*, 720 F.3d 436 (2d Cir. 2013)............................................................14

*United States v. Sells*, 463 F.3d 1148 (10th Cir. 2006) ........................................................14

<u>Statutes</u>

MCL 28.601 ...................................................................................................................7

MCL 28.602 ...................................................................................................................7

MCL 333.26424 .............................................................................................................8

MCL 333.26428 .............................................................................................................8

MCL 761.1 .....................................................................................................................7

MCL 780.651 .................................................................................................................9

MCL 780.652 .................................................................................................................7

## STATEMENT OF QUESTIONS PRESENTED

I.      ESTABLISHED INTERPRETATIONS OF THE FOURTH AMENDMENT REQUIRE THAT AN AFFIDAVIT TO A SEARCH WARRANT ESTABLISH PROBABLE CAUSE THAT THE ITEMS TO BE SEIZED UNDER THE WARRANT WILL BE AT THE PLACE TO BE SEARCHED. UNDATED ALLEGATIONS IN A SEARCH WARRANT AFFIDAVIT ARE PRESUMED STALE AND THE FACTS MUST ALLOW THE MAGISTRATE TO DETERMINE THAT THE EVIDENCE IS OR WILL BE PRESENT AT THE TIME OF THE SEARCH. IN THIS CASE, THE AFFIDAVIT FAILED TO ESTABLISH THE DATES OF TWO ALLEGED PURCHASES WHICH WERE THE ONLY EVIDENCE OF CRIMINAL CONDUCT. WHERE THE AFFIDAVITS CONTAINED THIS DEFECT, DOES THAT SEARCH WARRANT AFFIDAVIT FAIL TO ESTABLISH PROBABLE CAUSE REQUIRING APPLICATION OF THE EXCLUSIONARY RULE?

II.     ESTABLISHED INTERPRETATIONS OF THE FOURTH AMENDMENT REQUIRE THAT AN AFFIDAVIT TO A SEARCH WARRANT ESTABLISH PROBABLE CAUSE THAT THE ITEMS TO BE SEIZED UNDER THE WARRANT ARE PRESENT AT THE PLACE TO BE SEARCHED. WHERE THE AFFIDAVIT FAILED TO CONTAIN ANY ALLEGATION THAT THE PREMISES CONTAINED ADDITIONAL EVIDENCE OR CONTRABAND, DOES THAT SEARCH WARRANT AFFIDAVIT FAIL TO ESTABLISH PROBABLE CAUSE REQUIRING APPLICATION OF THE EXCLUSIONARY RULE?

III.    THE UNITED STATES SUPREME COURT DEVELOPED THE EXCLUSIONARY RULE TO DETER GOVERNMENTAL MISCONDUCT REGARDING FOURTH AMENDMENT PROTECTIONS. EXCEPTIONS APPLY TO THE APPLICATION OF THE EXCLUSIONARY RULE. WHERE THE AFFIANT FAILED TO INCLUDE A DATE, FAILED TO RELATE HIS TRAINING AND EXPERIENCE TO THE FACTS OF THIS CASE, AND THE WARRANT WAS DEFICIENT ON ITS FACE, SHOULD THE EXCLUSIONARY RULE BY APPLIED TO THE EVIDENCE SEIZED IN THIS CASE?

## FACTS

In October 2013, Kent County detectives executed a search warrant at 6701 Old 28th Street in Grand Rapids, Michigan based upon information gleaned from two undated traffic stops in which the two persons stopped were identified. The affidavit contains no information directly or by inference that the persons stopped observed any additional evidence or contraband on the premises.

## LAW/ARGUMENT

I.      ESTABLISHED INTERPRETATIONS OF THE FOURTH AMENDMENT REQUIRE THAT AN AFFIDAVIT TO A SEARCH WARRANT ESTABLISH PROBABLE CAUSE THAT THE ITEMS TO BE SEIZED UNDER THE WARRANT WILL BE AT THE PLACE TO BE SEARCHED. UNDATED ALLEGATIONS IN A SEARCH WARRANT AFFIDAVIT ARE PRESUMED STALE AND THE FACTS MUST ALLOW THE MAGISTRATE TO DETERMINE THAT THE EVIDENCE IS OR WILL BE PRESENT AT THE TIME OF THE SEARCH. IN THIS CASE, THE AFFIDAVIT FAILED TO ESTABLISH THE DATES OF TWO ALLEGED PURCHASES WHICH WERE THE ONLY EVIDENCE OF CRIMINAL CONDUCT. WHERE THE AFFIDAVITS CONTAINED THIS DEFECT, THE SEARCH WARRANT AFFIDAVIT FAILED TO ESTABLISH PROBABLE CAUSE REQUIRING APPLICATION OF THE EXCLUSIONARY RULE.

A.      Standards.

This issue pertains to a search warrant obtained and executed in 2013 at 6701 Old 38th Street in Kent County, Michigan. It is identified as being within the temporal scope of Count 1 (R. 1., PageID#1) and Count 2 (PageID#3) and is on the list of state search warrants identified in the government's pretrial summary (R. 23, PageID#56).

A "state search warrant being challenged in federal court must be judged by federal constitutional standards." *United States v. McManus*, 719 F.2d 1395, 1397 (6th Cir. 1983) (citing *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960)). In assessing whether a warrant to search a residence passes muster under the Fourth Amendment, the "critical element ... is ... that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978).

B.      Staleness analysis.

In the context of drug crimes, information goes stale very quickly "because drugs are usually sold and consumed in a prompt fashion." ***United States v. Frechette***, 583 F3d 374, 378 (6ᵗʰ Cir. 2009). The probable cause analysis must focus on whether the evidence sought will be there at the time of the warrant only.

This search warrant was executed on October 30, 2013. It is at Appendix 1, pp. 1 - 9. The third paragraph on page 5 states as follows:

> Your affiant was contacted by Deputy Ritchie and Deputy Hinds on October 30, 2013, who stated that HydroWorld was still open for business. Two traffic stops were conducted on people leaving HydroWorld and both subjects were in possession of marijuana which was purchased from the business. [Appendix 5].

During the preliminary examination, the detective admitted that no additional information was given to the magistrate other than what is included in the affidavit (PE, 19:22-20:1).[1] The detective also admitted that the date of the traffic stops was not included in the affidavit (PE, 17:6-16; 19:9-21). The next paragraph describes the stop of Edward Mason and gives some detail as to the stop of Mr. Mason. This paragraph describes the alleged purchase of three grams of marihuana but does not provide a date or suggest in any way that additional amounts of marijuana or other evidence related to a crime still existed. Even if it did, this would all depend on the conjecture that the incident occurred on or near October 30, 2013. The next paragraph describes the stop of Colton Westerling and only describes a lawful possession of marijuana by Mr. Westerling (under state law). It does not

---

[1] Omar Gonzalez was prosecuted in state court and convicted for the results of the execution of this warrant (Kent County Circuit Court No. 13-10880-FH; COA #327859 [unpublished]). The state trial court and the state appellate court both upheld the validity of this warrant. The Michigan Supreme Court denied leave to appeal.

2

provide a date or time and makes no suggestion that any additional amounts of marijuana or other evidence related to a crime still existed at the location to be searched.

The affidavit goes on for an additional two pages that consists of nothing but explanations of the affiant's training and experience, a description of the premises, and conclusory statements about the practices of street drug dealers – which is not relevant to the instant case. None of those allegations establish the likelihood that additional evidence would be located on the premises at any particular date or time. This is particularly true because the descriptions of the two stops do not explain how – or if – money was exchanged or whether any records were maintained for these events.

In the third paragraph on page 5, two deputies allegedly told the affiant about two traffic stops. The paragraph identifies the date the information was relayed but makes no suggestion as to the date of the stops. The government may argue that because the two sentences are in the same paragraph, a reasonable inference supports the conclusion that the two traffic stops also occurred on October 30, 2013. Defendant Trevino disagrees that a permissible inference may be stretched to provide information that the affiant simply failed to include but was reasonably available.

In *United States v. Hython*, 443 F.3d 480 (6ᵗʰ Cir. 2006), the Sixth Circuit addressed the issue of undated allegations. The district court in *Hython* had ruled the affidavit invalid on staleness grounds because the information concerning a controlled buy was undated.[2] *Hython* reiterated that a warrant must be supported by "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause *at that time*." *Hython*, at 485, citing *Sgro v. United States*, 187

---

[2] The issue decided by the Sixth Circuit focused on the good faith exception to the exclusionary rule which is discussed below because the government did not contest the staleness conclusion of the district court. *Hython*, *supra*, at 484. Previous Sixth Circuit authority established a presumption of staleness for undated allegations. *United States v. Boyd*, 422 F.2d 791 (6th Cir. 1970).

3

U.S. 206, 210, 53 S.Ct. 138, 77 L.Ed. 260 (1932) (emphasis added). The Court held that the sale of drugs – albeit in a residence in *Hython* – is not inherently ongoing. The only information to suggest an ongoing activity in the instant case are conclusory and anecdotal statements from the officers that stopped Mr. Mason and Mr. Westerling. There is nothing from either of the persons stopped to suggest an ongoing activity. The affidavit states that the two deputies claimed Mr. Mason and Mr. Westerling were stopped "leaving Hydroworld." The affidavit does not explain if the deputies actually observed them leave Hydroworld either physically from the building or from the parking lot in vehicles. The affidavit does not explain whether the information was supplied verbally to the deputies that made the stop by Mr. Mason and Mr. Westerling. While hearsay is allowed to be considered, its source should be identified.

Because probable cause has a durational aspect, at least some temporal reference point is necessary to ascertain its existence. *Hython, supra*, at 486, citing *United States v. Harris*, 403 U.S. 573, 578 n. *, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). *Hython* discussed some circumstances where undated allegations can be overcome to avoid staleness. All of the things listed – ongoing investigation, subsequent or previous controlled buys, or further surveillance – were missing in *Hython* and are missing in the instant case.

Defendant Trevino acknowledges that inferences are permissible. Any inferences, however, must be drawn from facts within the affidavit and not from assumptions. In conclusion, the Court said "This inference [the date of the activity] connects an event in the affidavit with an insufficiently substantiated assumption about police practice and, as such, is not a valid basis for rescuing the warrant." *Hython*, *supra*, at 489.

4

II.     ESTABLISHED INTERPRETATIONS OF THE FOURTH AMENDMENT REQUIRE THAT AN AFFIDAVIT TO A SEARCH WARRANT ESTABLISH PROBABLE CAUSE THAT THE ITEMS TO BE SEIZED UNDER THE WARRANT ARE PRESENT AT THE PLACE TO BE SEARCHED. WHERE THE AFFIDAVIT FAILED TO CONTAIN ANY ALLEGATION THAT THE PREMISES CONTAINED ADDITIONAL EVIDENCE OR CONTRABAND, THE SEARCH WARRANT AFFIDAVIT FAILED TO ESTABLISH PROBABLE CAUSE FOR THE BROAD SCOPE OF ITEMS IN THE WARRANT CREATING A GENERAL WARRANT AND REQUIRING APPLICATION OF THE EXCLUSIONARY RULE.

A.     Standard.

The scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase." *United States v. Ross*, 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982).

B.     Analysis – general warrant and scope of probable cause.

As an alternative basis for suppression, Defendant Trevino asserts that the scope of the warrant allowed a search for many items which were not supported by probable cause. The warrant authorized the police to search for records which would indicate the trafficking of controlled substances such as, telephone records of long distance calls, financial transactions involving the accumulation or transferring of cash money. It also allowed the police to search for the following items:

Photographs
Videos
Video recordings
Computers
Hard drive and computer disks
Magnetic storage devices
Any and all papers identifying or tending to identity owners/occupants or associates

Documents identifying names, addresses and phone numbers of associates
Receipts of storage facilities
Rental agreements
Property interest in real or personal property
Keys or receipts to a strong box
Records involving the acquisition of assets
Paperwork indicating amounts of money owed or payable
Names of customers or suppliers and their phone numbers
Paperwork indicating weights controlled substances are commonly sold in
Tax records indicating the lack of income inconsistent with a possessor of these amounts of controlled substances
Etc.
Any and all quantities of marihuana
Paraphernalia for use, possession, manufacture, cultivation, or delivery of marihuana
Any and all papers, documents or other articles identify the occupants of the premises or the possessors of the controlled substance marihuana being evidence of a crime
Any quantities of money tending to establish the illicit act of sales of marihuana
Any firearms and ammunition used for the protection of controlled substances and/or the proceeds or for protection of the business of the sale of controlled substances.
See Appendix, p. 1.

As with most current search warrant affidavits, the affiants attempt to broaden the scope of the items to be seized by including voluminous boilerplate paragraphs relating their training and experience. This affiant claimed in un-numbered paragraphs:

a. 18 years experience including drug dog handler, clandestine laboratory training, and two narcotics investigation courses. Appendix, p. 4.

b. Participation in "many" undercover narcotics and search warrant cases. *Id*.

c. Familiarity with distribution, concealment, use and sale techniques common to the narcotics trade in West Michigan. *Id*.

d. Experience from cooperating with other law enforcement agencies in narcotics enforcement. *Id*.

e. Participation in debriefing defendants and suspects to learn intricacies of the criminal element in relation to drug trafficking. *Id*.

f. Participation in a 16-hour indoor marihuana growing investigations class. *Id*.

6

Whatever value this information might have had prior to 2008 in Michigan was eviscerated by the Michigan Medical Marihuana Act which was a voter initiative created in 2008. The affiant explains his understanding of the state of state law based upon *State of Michigan v. McQueen* and concludes that "Hydroworld" was in violation of the medical marihuana act and therefore not entitled to the protections of that law. This information helps defeat probable cause in two ways.

First, it negates most the affiant's training and experience because most of it related to trafficking activities that were completely illegal under state and federal law prior to 2008. The clear inference in the paragraphs on page 5 of the affidavit (Appendix page 5) is that a state law enforcement officer has to make additional determinations before he can conclude whether marihuana activity is illegal under state law or not. This is important because Michigan law enforcement officers cannot enforce federal law unless they are specifically tasked to work with a federal law enforcement agency on a particular investigation.

MCL 28.602(l)(i) provides definitions for use in the Commission of Law Enforcement Standards Act, MCL 28.601 et seq. It states, in pertinent part, "(l) 'Police officer' or 'law enforcement officer' means . . . (i) A regularly employed member of a law enforcement agency authorized and established by law, including common law, who is responsible for the prevention and detection of crime and the enforcement of the general laws of this state. Arrest powers are limited to felonies or misdemeanors that are violations of a penal law "of this state" and "federal law enforcement officer" has its own unique definition assuming enforcement of federal laws. MCL 761.1. Where a state search warrant is obtained to search for or seize property, that property must be possessed, controlled, or used wholly or partially in violation of a law of the state of Michigan. MCL 780.652(1)(c). In *Jones v. U.S. Drug Enforcement Administration*, 801 F.Supp. 15 (M.D. Tenn. 1992), that federal District

7

Court was faced with a similar situation where a seizure by state officers at an airport assigned to a task force attempted to justify the forfeiture by claiming federal authority. Because they were not federally deputized until after the seizure, the trial court rejected their claim. See *West v. Atkins*, 487 U.S. 42; 108 S.Ct. 2250; 101 L.Ed.2d 40 (1988), (the source of the officers' power drives their status as state actors or federal actors); *Miami County Municipal Court v. Wright*, 963 F.2d 876 (6th Cir. 1992) (state trooper turned money for forfeiture over to a fellow officer who was a DEA liaison but the seizure remained state action).

Second, *People v. McQueen*, 293 Mich. App. 644, 811 N.W.2d 513 (2011) was decided by the Michigan Court of Appeals on August 23, 2011. That case involved a nuisance action against a business that rented lockers and processed sales of marihuana between patients and caregivers that were not connected to each other through the registry established by the Act. The discussion in the decision involved an immunity provision of MCL 333.26424. It had nothing to do with a private individual providing medical marihuana for medical purposes or medical use under the provisions of MCL 333.26428 (a defense, not an immunity).

The Michigan Supreme Court granted leave to appeal and issued its decision on February 8, 2013 – eight months before this affidavit for a search warrant was presented to a state magistrate. One important point of the Michigan Supreme Court's opinion is the conclusion that sales of medical marihuana can fall within the "medical use" protections of the Act. *People v. McQueen*, 493 Mich. 135, 152, 828 N.W.2d 644 (2013). The Michigan Supreme Court affirmed the Court of Appeals as to the immunity of MCL 333.26424 but for different reasons. The Michigan Supreme Court did not preclude use of the defense in MCL 333.26428 in a criminal case and only mentioned that it did not apply by its express terms in a nuisance case.

8

In summary, the affiant misled the state magistrate by mentioning the Court of Appeals decision completely out of context. The affidavit does not establish that either the immunity or the defense would not be available under the extremely brief explanation of the contents of the discussions with the two persons stopped by the deputies. The affidavit gives no facts to support a finding or inference that the acquisition of the medical marihuana by the persons stopped was not for medical use. The drug team could not use the search warrant process to gather evidence related to a nuisance violation. See MCL 780.651(1).[3]

The exhaustive list of items to be searched for and seized is very broad. Most of it is record based in one fashion or another but a fair, common sense reading indicates that the affiant wanted inside to go fishing. Not a single fact came from the persons stopped to conclude (directly or by inference) that the bulk of those records would be present. The affidavit contradicts itself in important ways. The third paragraph on page five makes an unsupported conclusory allegation that the marihuana was purchased from "the business." The fourth and fifth paragraphs specifically identify the seller as "Omar." Mr. Mason had a medical marihuana card that was expired by about two months as of the time the information was relayed from the deputies to the affiant. The time lapse between the expiration and the stop is unknown. Mr. Westerling had a valid medical marihuana card. The affidavit does not exclude "Omar" as Mr. Westerling's registered caregiver. The existence of these cards creates an inference against probable cause because it strongly suggest that both men had a valid medical need for the marihuana (under state law). Even if "Omar" was not the registered

---

[3] Sec. 1. (1) When an affidavit is made on oath to a judge or district court magistrate authorized to issue warrants *in criminal cases*, and the affidavit establishes grounds for issuing a warrant under this act, the judge or district court magistrate, if he or she is satisfied that there is probable cause for the search, shall issue a warrant to search the house, building, or other location or place where the person, property, or thing to be searched for and seized is situated (emphasis added).

caregiver, he would have been entitled to rely on the defense under MCL 333. 26428 but for the affiant's mis-use of *People v. McQueen*.  In *Universal Health Services, Inc., v. United States*, __ U.S. __, 136 S.Ct. 1989, 195 L.Ed.2d 348 (2016), the Supreme Court discussed the concept of "half-truth" in a case involving the False Claims Act. The Supreme Court said:

> They fall squarely within the rule that half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations.[4]

The bottom line is that there is no basis to conclude that the alleged "records" – if any – would have been records of anything illegal that the state officer/affiant had authority to investigate or prosecute.

The last paragraph of page 5 and all of page 6 of the affidavit are the affiant's attempt to justify the scope of the records list. Interestingly, the descriptions of records on page six is devoid of any claim that additional marihuana will be on the premises yet marihuana is in the list of items to be seized. Neither Mr. Mason or Mr. Westerling reported any additional marihuana on the premises.

In *United States v. Schultz*, 14 F.3d 1093 (6th Cir. 1994), a search warrant for a safe deposit box based on only an officer's training and experience was inadequate. The fact that there was criminal activity and the suspect owned the safety deposit box left the warrant in the category of a prohibited "general warrant" because there was no nexus between the safety deposit box and the

---

[4] Footnote from original:

This rule recurs throughout the common law. In tort law, for example, "if the defendant does speak, he must disclose enough to prevent his words from being misleading." W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 106, p. 738 (5th ed. 1984). Contract law also embraces this principle. See, e.g., Restatement (Second) of Contracts § 161, Comment a, p. 432 (1979). And we have used this definition in other statutory contexts. See, e.g., *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44, 131 S.Ct. 1309, 179 L.Ed.2d 398 (2011) (securities law). *Universal Health Services*, *supra*, 136 S.Ct. at 2000, n. 3.

criminal activity. This Court said that the officer's training and experience

> "cannot substitute for the lack of evidentiary nexus in this case, prior to the search, between the safe deposit boxes and any criminal activity. Officer Ideker did not have anything more than a guess that contraband or evidence of a crime would be found in the boxes, and therefore the first warrant should not have been issued. To find otherwise would be to invite general warrants authorizing searches of any property owned, rented, or otherwise used by a criminal suspect—just the type of broad warrant the Fourth Amendment was designed to foreclose."
> *Schutlz*, at 1097-1098.

See also, *United States v. Savoca*, 761 F.2d 292, 295 (6th Cir.1985) (the inference that bank robbers tend to conceal evidence in motel rooms, standing alone, is insufficient to support the search of two bank robbers' hotel room).

The affiant goes to considerable lengths to explain differential characteristics for "user" type of trafficker and the "profit" type of trafficker. Appendix, 5 – 6. Unfortunately for the government, he makes no effort to empirically relate the facts of the instant case to any of that anecdotal, conclusory explanation.

C.     Clearly established law as to general warrants.

The Fourth Amendment circumscribes searches, and "those searches deemed necessary should be as limited as possible." *Cassady v. Goering*, 567 F.3d 628, 634 (10th Cir. 2009). Historically, "the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings." *Id*. Courts have clarified that a warrant's reference to a particular offense will not suffice. *Id*. at 636. A warrant must ensure that the proposed search stays confined in scope and correlates to particularly described evidence relating to a specific offense for which demonstrated probable cause exists. *Id*. The difference between a valid warrant and an overbroad warrant lies in whether authorities could have phrased the warrant more specifically. *Id*. What courts have called "mere words" in a warrant

11

can violate the Fourth Amendment. *Id.* Officers cannot simply search for "all" evidence of "any" crime. *Id*. at 637.

General warrants are prohibited by the Fourth Amendment. "(T)he problem (posed by the general warrant) is not that of intrusion Per se, but of a general, exploratory rummaging in a person's belongings. . . . (The Fourth Amendment addresses the problem) by requiring a 'particular description' of the things to be seized." ***Coolidge v. New Hampshire***, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). This requirement " 'makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.' " ***Stanford v. Texas***, 379 U.S. 476, 485, 85 S.Ct. 506, 512, 13 L.Ed.2d 431 (1965), quoting ***Marron v. United States***, 275 U.S. 192,196, 48 S.Ct. 74, 72 L.Ed. 231 (1927).

Multiple descriptions in this warrant left complete discretion with the officers executing the warrant:

- Any and all papers identifying *or tending to identity* owners/occupants or associates

- Records involving the acquisition of assets

- Tax records *indicating the lack of income inconsistent with a possessor* of these amounts of controlled substances

- Etc.

- Any quantities of money *tending to establish* the illicit act of sales of marihuana

"The chief purpose of the particularity requirement [is] to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed." ***Baranski v. Fifteen Unknown Agents***

*of the Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 441 (6th Cir. 2006). The affidavit describes two undated sales of small amounts of marihuana. The list of items to be seized is clearly intended to allow exploration into potential forfeiture issues and to fish for evidence of major trafficking. The contents of the affidavit do not support either of those purposes. The request for tax records because the officer is allowed to determine how to describe the negative "lack of income." The officer is also allowed to decide how much income is inconsistent. Moreover, the phrase "possessor of these amounts" is extremely ambiguous. If this is a reference to the amounts possessed by Mr. Mason and Mr. Westerling, then those amounts are irrelevant because they are no longer possessed by the seller. If it is not a reference to those amounts, it has no reference point within the affidavit whatsoever and allows a general exploration for information or items that might fit the description.

D.      Remedies.

Defendant Trevino asserts that an evidentiary hearing may be necessary to create a proper record as to the extent of the involvement of the affiant in gathering the information from the deputies regarding the stops and involvement in execution of the warrant in terms of breaching the door and seizure of property. This may be relevant to whether the good faith exception should apply if the Court is not satisfied with the records from the state trial court.

Regarding the undated allegations, Defendant Trevino asserts that the presumption of staleness for undated allegations in an all-or-nothing issue in this particular case. There is no other information to assist in inferring a date and therefore the entire warrant is invalid requiring suppression of everything seized, observed, and learned as well as any other portions of the investigation tainted by the illegality.

13

If the Court believes that some of the items on the list were not supported by probable cause but other items were (and disagrees with the staleness argument), then the Court must decide whether to strike the entire warrant or sever the invalid portions. Defendant Trevino asserts that the invalid portions of this warrant overwhelm the valid portions (if any are found to be valid) and that severance is inappropriate. Defendant Trevino must concede that the state of the law in this Circuit requires severance. Defendant Trevino, however, urges the Court to adopt the approach taken by the Second Circuit and the Tenth Circuit and first determine whether the invalid portions overwhelm the valid portions. If so, the entire warrant is declared a general warrant and all evidence is suppressed. See. *United States v. Galpin*, 720 F.3d 436, 448–49 (2d Cir. 2013) and *United States v. Sells*, 463 F.3d 1148 (10th Cir. 2006).

III.    THE UNITED STATES SUPREME COURT DEVELOPED THE EXCLUSIONARY RULE TO DETER GOVERNMENTAL MISCONDUCT REGARDING FOURTH AMENDMENT PROTECTIONS. EXCEPTIONS APPLY TO THE APPLICATION OF THE EXCLUSIONARY RULE. WHERE THE AFFIANT FAILED TO INCLUDE A DATE, FAILED TO RELATE HIS TRAINING AND EXPERIENCE TO THE FACTS OF THIS CASE, AND THE WARRANT WAS DEFICIENT ON ITS FACE, SHOULD THE EXCLUSIONARY RULE BY APPLIED TO THE EVIDENCE SEIZED IN THIS CASE?

A.    Standards.

The application of the exclusionary rule of the Fourth Amendment is a question of law. *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir.2005). Where an officer's reliance on a warrant is objectively reasonable, the Supreme Court held, no additional deterrent effect will be achieved through the exclusion from evidence of the fruits of that search. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The good-faith exception is not applied in four situations: (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2)

14

where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient. See *id*. at 923, 104 S.Ct. 3405.

B.    Misleading information.

Defendant Trevino asserts that the misleading information about *People v. McQueen* would fall into this category and weigh against application of the exception to the exclusionary rule. This is discussed above. In summary, ***McQueen*** was a civil nuisance abatement issue. Its analysis as to whether a "sale" was included within the Medical Marihuana Act was rejected and its analysis as to the applicability of both the immunity and the defense in the Act were either changed or ruled not applicable. The affiant should have known this information because the Michigan Supreme Court's opinion had been out for eight months at the time of the affidavit.

C.    Rubber stamp.

With absolutely no date as to the stops of Mr. Mason and Mr. Westerling and no non-conclusory information to suggest an ongoing activity, the magistrate abandoned his role. The affiant was very clear that he received the information from the deputies on October 30, 2013. Any assumption that the stops also occurred on that date has no support directly or by inference from the four corners of the affidavit.

D.     Lack of substantial basis or so lacking of indicia of probable cause as to render reliance
unreasonable.

1.     "Bare-bones" causing lack of substantial basis to justify a finding of probable cause.

An affidavit that is so lacking in indicia of probable cause that no reasonable officer would
rely on the warrant has come to be known as a "bare bones" affidavit. See ***United States v. Weaver***,
99 F.3d 1372, 1380 (6th Cir. 1996). A bare-bones affidavit, in turn, is commonly defined as one that
states only "suspicions, beliefs, or conclusions, without providing some underlying factual
circumstances regarding veracity, reliability, and basis of knowledge." ***United States v. Laughton***,
409 F.3d 744, 748 (6th Cir. 2005) (quoting ***Weaver***, 99 F.3d at 1378). Put more simply, a bare-bones
affidavit is a conclusory affidavit, one that asserts "only the affiant's belief that probable cause
existed." ***United States v. Williams***, 224 F.3d 530, 533 (6th Cir. 2000) (quoting ***United States v.
Finch,*** 998 F.2d 349, 353 (6th Cir. 1993)). It provides nothing more than a mere "guess that
contraband or evidence of a crime would be found," ***United States v. Schultz***, 14 F.3d 1093, 1098
(6th Cir. 1994), either "completely devoid" of facts to support the affiant's judgment that probable
cause exists, ***United States v. Carpenter***, 360 F.3d 591, 595–96 (6th Cir. 2004) (en banc), or "so
vague as to be conclusory or meaningless." ***United States v. Frazier***, 423 F.3d 526, 536 (6th Cir.
2005) (quoting ***Carpenter***, 360 F.3d at 596).

In this case, the affidavit is completely devoid of any date related to the alleged purchases by
Mr. Mason and Mr. Westerling. Any type of reading of the warrant (hypertechnical, holistic, totality
of the circumstances, or otherwise) simply cannot provide the necessary component of a temporal
connection. In the context of a date, this affidavit is bare-bones. The "finding" that the purchases
occurred on October 30 are nothing but "suspicions, beliefs, or conclusions" which are clearly

16

established as improper. In **United States v. Abernathy**, 843 F.3d 243, 254 (6th Cir. 2016), the Sixth Circuit held that even though the police had "indisputable proof that drugs had recently been inside the defendant's residence," the affidavit did not establish that drugs and related paraphernalia would be in the residence absent some additional evidence of drug trafficking there. The good-faith analysis is explicitly based on what is lacking, asking whether the affidavit was "so *lacking in indicia* of probable cause as to render official belief in its existence entirely unreasonable." **Leon**, 468 U.S. at 923, 104 S.Ct. 3405 (emphasis added).

    2.  Lacking indicia of probable cause so as to render reliance unreasonable.

The affiant went to great lengths to explain his training and experience. He claimed intricate knowledge of the habits and practices of two different types of drug traffickers. This training and experience creates an inference that this particular affiant acted unreasonably when he relied on a search warrant with completely undated allegations. The affidavit does not explain whether the deputies provided the information directly to the affiant or to other officers. Either way, the affiant's training and experience would indicate that he could have easily ascertained the date of the stops instead of the date the information was relayed. He chose not to do so and his reliance on this failure is not reasonable. The requirements that the events supporting probable cause be dated so the magistrate can exercise independent judicial discretion were well-established at the time of this warrant. In **Groh v. Ramirez**, 540 U.S. 551, 565, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004), the Supreme Court found that it was unreasonable for the officer to presume the warrant was valid in the absence of any list of items to be seized.[5] In the instant case, it was equally unreasonable to presume

---

[5] At the same time, the Supreme Court held that the "objective reasonableness" standard for civil liability is the same as the standard for the **Leon** good-faith analysis.

that the date of the contacts with Mr. Mason and Mr. Westerling were the same as the date the information was relayed to the affiant.

E.      Lack of good faith or objective unreasonableness.

Defendant Trevino has pointed out this affiant's training and experience. This is not to suggest that this particular affiant's subjective good faith is to be examined. The point of highlighting this information is to reiterate part of the test for the fourth exception to application of the exclusionary rule: whether a reasonably well-trained officer would have recognized that a search based upon the warrant would be subject to suppression despite the magistrate's authorization. **Leon, *supra,*** at 923 n. 23. *See also **United States v. Corrigan***, 809 F. Supp. 567, 570 (M.D. Tenn. 1992).

Also in **Corrigan**, that district court considered whether the affiant was also the executing officer. In this case, the affiant was the same officer that executed the search warrant. He was also the seizing officer although he did not physically touch the items from where they were found and he did not prepare the return. See Attachment 2, excerpts of Det. Alderink's preliminary examination testimony in state court.

The staleness discussion here includes, but is not limited to, the failure to provide information as to whether additional marihuana or other evidence would be found on the premises. Staleness is not necessarily a separate element or requirement but is included in the overall circumstances. In this case, even if the date of the traffic stops is indeed October 30 and even if it would have been included, there is no evidence from the persons stopped that additional marihuana was on the premises – at the time. The defects here are so obvious that any reasonable officer with this degree of training would have known that the magistrate's approval did not save this search.

**RELIEF REQUESTED**

WHEREFORE, Defendant respectfully requests this Honorable Court enter an order suppressing all evidence seized from 6701 Old 28th Street in October 2013 pursuant to this warrant. Furthermore, Defendant respectfully requests that this Honorable Court require the government to justify the federal search warrants executed on May 3, 2016 since those warrants relied on this search.

8/23/2018                                         */s/ J. Nicholas Bostic*
                                                  J. Nicholas Bostic   P40653
                                                  Attorney for Defendant Trevino

**CERTIFICATE OF SERVICE**

J. Nicholas Bostic certifies and says that on the 23rd day of August, 2018, he served Defendant Trevino's Corrected Motion to Suppress #1 (6701 Old 28th Street, October 2013) on Joel Fauson, Attorney for Plaintiff and counsel for all co-Defendants by using the Court's electronic filing system which will automatically send notice to all counsel of record. I declare that the above statement is true to the best of my information, knowledge and belief.

8/23/2018                                         */s/ J. Nicholas Bostic*
                                                  J. Nicholas Bostic   P40653
                                                  Attorney for Defendant Trevino

19