STATE OF MICHIGAN

IN THE 63RD DISTRICT COURT (GRAND RAPIDS, MICHIGAN)

THE PEOPLE OF THE STATE OF MICHIGAN,

v.                                              File No. D13-4656-FY

OMAR CATARINO GONZALEZ,

       Defendant.
                                   /



PRELIMINARY EXAMINATION

BEFORE THE HONORABLE STEVEN R. SERVAAS - DISTRICT JUDGE

Grand Rapids, Michigan - Wednesday, November 13, 2013

APPEARANCES:

| | |
|---|---|
| For the People: | MR. KEVIN M. BRAMBLE (P53752)<br>KENT COUNTY PROSECUTOR'S OFFICE<br>82 Ionia Avenue, Northwest, Suite 450<br>Grand Rapids, Michigan 49503<br>(616) 632-6710 |
| For the Defendant: | MR. NICHOLAS J. BOSTIC (P40653)<br>909 North Washington Avenue<br>Lansing, Michigan 48906<br>(517) 706-0132 |

- - -

| | |
|---|---|
| RECORDED BY: | Danelle L. Wheeler, CEO-8748 |
| TRANSCRIBED BY: | Amanda L. Dubay, CER-5136<br>Official Court Recorder<br>(616) 632-7820 |

TABLE OF CONTENTS

| | PAGE |
|---|---|
| **WITNESSES: PEOPLE** | |
| DETECTIVE DANIAL ALDERINK | |
|     Direct Examination by Mr. Bramble | 4 |
|     Cross-Examination by Mr. Bostic | 14 |
|     Redirect Examination by Mr. Bramble | 26 |
| **WITNESSES: DEFENDANT** | |
| None | |
| Motion by Mr. Bramble for Bind-Over | 27 |
| Objection by Mr. Bostic to Bind-Over | 27 |
| Court's Decision to Bind Defendant Over to Circuit Court | 30 |

| EXHIBITS: | | PAGE MARKED | RECEIVED |
|---|---|---|---|
| DX-A | Search Warrant; Affidavit For Search Warrant; Return To Search Warrant | 18 | X |
| DX-B | Floor Plan | 21 | 23 |

```
 1              DETECTIVE ALDERINK:  A-l-d-e-r-i-n-k.
 2              THE COURT:  And would you raise your right hand,
 3     please?  Do you solemnly swear to tell the truth, the whole
 4     truth, and nothing but the truth, so help you God?
 5              DETECTIVE ALDERINK:  I swear.
 6              THE COURT:  Have a seat, please.
 7              Mr. Bramble?
 8              MR. BRAMBLE:  Thank you, your Honor.
 9                  DETECTIVE DANIAL ALDERINK
10          (At 5:00 p.m., called by the People, duly sworn by
11              the Court, testified as follows)
12                       DIRECT EXAMINATION
13  BY MR. BRAMBLE:
14  Q.  Mr. Alderink, are you employed?
15  A.  I am.
16  Q.  Where are you employed?
17  A.  The Kent County Sheriff's Department, currently assigned to
18      the Kent Area Narcotics Enforcement Team.
19  Q.  Your duties and responsibilities in that position?
20  A.  Vice Detective and K-9 handler.
21  Q.  How long have you worked in law enforcement?
22  A.  I've been in law enforcement for eighteen years; seventeen
23      with the Sheriff's Department and nine and a half working
24      with KANET.
25  Q.  What, again, is KANET?
```

```
 1  A.  Kent Area Narcotics Enforcement Team.
 2  Q.  Were you involved in processing or investigating different
 3      marijuana dispensary businesses?
 4  A.  Yes, I was.
 5  Q.  And why were you investigating them?
 6  A.  Because medical marijuana dispensaries are illegal in the
 7      state of Michigan, and a letter was drafted up by the
 8      Prosecutor's Office for all of the dispensaries in Kent
 9      County.
10          MR. BOSTIC:  Your Honor, I'm going to object to
11      this testimony.  Letters from the Prosecutor's Office and
12      conclusory statements about this are not really relevant to
13      what we're doing here today.
14          THE COURT:  I think it sounds like they're just
15      trying to let me know why he's even doing what he's doing.
16      I'm not taking it for any evidentiary purpose, but I think
17      you may ask how he got into this -- this case.
18  BY MR. BRAMBLE:
19  Q.  You've indicated some -- a letter was drafted by the Kent
20      County Prosecutor?
21  A.  Yes, it was.
22  Q.  Was it served on these various medical marijuana
23      dispensaries?
24  A.  Yes, it was, in March of this year, I believe, March 6th.
25  Q.  Specifically were you -- was one served at the HydroWorld at
```

```
 1            6701 Old 28th Street, Southeast?
 2   A.   Yes, it was.
 3               THE COURT:  I'm sorry, what was the address again?
 4               MR. BRAMBLE:  6701 --
 5               THE COURT:  6701?
 6               MR. BRAMBLE:  -- Old 28th Street.
 7               THE COURT:  Okay.  Thank you.
 8               MR. BRAMBLE:  Yes.
 9   BY MR. BRAMBLE:
10   Q.   And is that in Cascade Township, County of Kent, State of
11        Michigan?
12   A.   Yes, it is.
13   Q.   Did your investigation of, specifically, this HydroWorld end
14        there with the presentation of this letter to them?
15   A.   This letter was -- they were distributed by various members
16        of the team -- of our team, and I believe Detective Tuinhoff
17        and Detective Sergeant Coxon served the letter at that
18        location in March.
19               MR. BOSTIC:  Your Honor, I'm going to have to
20        object.  He's initially testified that it was served and now
21        he's just told us that he doesn't have personal knowledge.
22        So I would ask that it be stricken.
23               THE COURT:  Again, you know, I don't think it has
24        any real relevance as to the allegations, and I'm not
25        considering, you know, the fact that the Prosecutor issued a
```

```
 1          letter as being any sort of proof that there's a violation.
 2                  Go ahead, Mr. Bramble.
 3                  MR. BRAMBLE:  Thank you.
 4  BY MR. BRAMBLE:
 5  Q.   Did you get a search warrant for HydroWorld at 6701 Old 28th
 6       Street?
 7  A.   Yes, I did.
 8  Q.   Why did you get a search warrant for that business?
 9  A.   It was as a result of our strike team, within the Kent County
10       Sheriff's Department, noticed that HydroWorld was still in
11       business and observed the business, and two people were
12       stopped on traffic stops leaving the business.  Both subjects
13       were in possession of marijuana, both stated that they had
14       purchased marijuana from HydroWorld.
15                  MR. BOSTIC:  Objection, hearsay.
16                  THE COURT:  Sustained.
17  BY MR. BRAMBLE:
18  Q.   Did you get the search warrant?
19  A.   Yes, I did.
20  Q.   Did you have it sworn in?
21  A.   Yes, I did.
22  Q.   And who signed the search warrant?
23  A.   Magistrate Milroy.
24  Q.   Did you execute this search warrant?
25  A.   Yes, I did.
```

1   THE COURT: It may do so.
2   (At 5:06 p.m., witness identified Defendant)
3   BY MR. BRAMBLE:
4   Q. Well, after the Defendant -- did he refuse to let you in the
5      business?
6   A. Yes, he did.
7   Q. Did he refuse to open the door?
8   A. Yes, he did.
9   Q. What acts -- course of action did you take once the Defendant
10     refused to allow or honor the search warrant you said you
11     had?
12  A. I told him that if he didn't answer the door, that we would
13     have to smash it and force our way in, which we then did.
14  Q. And can you tell Judge Servaas, what did you see once you got
15     inside this business?
16  A. I saw various amounts of marijuana throughout the office,
17     some marijuana plants growing --
18          MR. BOSTIC: Your Honor, I want to -- I want to
19  interpose an objection at this point. Last Friday I had
20  asked for a copy of the search warrant and the affidavit and
21  the return to be forwarded to me. It may have been left at
22  the business, but we don't have it, so I haven't seen it. I
23  realize at this point that I'm just stating an objection for
24  the record, so the Court knows that I'm not waiving any
25  challenge to any Fourth Amendment issue.

```
1              MR. BOSTIC:  Yes.
2              THE COURT RECORDER:  Okay.
3              THE COURT:  Thank you.
4              Mr. Bramble?
5              You can have a seat, Detective.
6              She'll be right back, and I don't have any
7       objection if you continue questioning.
8              MR. BRAMBLE:  Thank you, Your Honor.
9    BY MR. BRAMBLE:
10   Q.  What did you observe once you gained entry into this
11       business?
12   A.  I observed various amounts of marijuana throughout the office
13       and some marijuana plants growing in one of the rooms.  Small
14       -- small marijuana plants.
15   Q.  I noticed in your report that you said that you've also
16       observed and collected marijuana medibles -- if I'm
17       pronouncing that right, m-e-d-i-b-l-e-s -- what are those?
18   A.  They're marijuana food, sometimes brownies, cookies, candies
19       that are made with THC butter, generally.
20   Q.  Did you collect the marijuana that you found inside them?
21   A.  Yes.
22   Q.  And how much -- was it tested, field tested?
23   A.  Yes, it was.
24   Q.  Who field tested it?
25   A.  I did.
```

```
 1                    THE COURT:  Thirty-nine and forty?
 2                    THE WITNESS:  The number of different medibles;
 3         brownies, cookies --
 4                    THE COURT:  Okay.  And those are the things you say
 5         are cookies and --
 6                    THE WITNESS:  Yes.
 7                    THE COURT:  -- brownies and things like that?
 8              Okay.  Thank you.
 9    BY MR. BRAMBLE:
10    Q.   To your understanding, does the marijuana there have to be
11         segregated and confined in a certain way?
12    A.   As far as different strains?
13    Q.   How -- just how it's stored?
14    A.   Most dispensaries we've dealt with or people with medical
15         marijuana, they have different strains of marijuana and keep
16         it separated that way.
17    Q.   Okay.  When you -- what did you do once you seized this
18         marijuana?
19    A.   It was packaged, brought back to our office where I weighed
20         it, field tested it, and sealed it up.
21    Q.   Is it stored in your evidence lockers at this point?
22    A.   Yes, it is.
23    Q.   Did you request the assistance of the Cascade Township Fire
24         Department?
25    A.   I did.
```

```
 1  Q.  Why?
 2  A.  There was a safe that was in the office that Mr. Gonzalez
 3      said he did not have access to open it, and the Fire
 4      Department was contacted by my lieutenant who was out there
 5      with me that night also to cut the safe open.
 6  Q.  And did you -- what did you find inside the safe?
 7  A.  A large amount of U.S. currency.
 8  Q.  Did you seize that money?
 9  A.  Yes, I did.
10  Q.  Was the Defendant arrested?
11  A.  Yes, he was.
12  Q.  And where was he transported?
13  A.  Kent County Jail.
14  Q.  And were you the one that sought the warrants on this matter?
15  A.  Yes, I was.
16          MR. BRAMBLE:  Your Honor, I don't think I have
17      anything further as this time.
18          THE COURT:  All right.  Thank you.  Mr. Bostic?
19          MR. BOSTIC:  Thank you, your Honor.
20                      CROSS-EXAMINATION
21  BY MR. BOSTIC:
22  Q.  Detective, is there any reason that you didn't honor the
23      request to display the search warrant?
24  A.  I explained to Mr. Gonzalez that he would see a copy of the
25      search warrant once we gained entry.  It's a safety issue for
```

```
 1  Q.  Who is that?
 2  A.  Oh, that would be the -- I believe, the business owner -- or,
 3      the property owner.
 4  Q.  Came after the fact to secure the door?
 5  A.  Yes, he did.
 6  Q.  Okay.  Looking at your affidavit on page 5, did you inform
 7      the Magistrate of the date that Mr. Mason was allegedly
 8      stopped?
 9  A.  In the paragraph before that it states that Deputy Ritchie
10      and Deputy Hinds stopped people leaving on October 30th.
11  Q.  Well, we must be looking at different affidavits.  Can you
12      point me to the paragraph where it says that those two
13      persons were stopped on October 30th?
14  A.  On page 5, the third paragraph down, "Your affiant
15      was contacted by Deputy Ritchie and Deputy Hinds on
16      October 30th…"
17  Q.  Okay.  What I want you to do is start --
18              THE COURT:  Can I do this; I don't think I have a
19      copy of any of those things.  Do you have any objection if we
20      make copies -- do you have a copy now you can refer to?
21              MR. BOSTIC:  No, but that's okay.  I've got the --
22      it's in here.
23              THE COURT:  Okay.  Danelle, would you, I'm sorry,
24      make -- make one more set of copies, if you would?
25              MR. BRAMBLE:  I don't have a copy of it either.
```

17

```
 1         of 2 also?
 2   A.    I may have missed one, I apologize.  Yes, I do have the other
 3         one here.
 4   Q.    All right.  I don't need it right now.  We can -- that's
 5         fine.
 6              Okay.  So you have both of your original returns
 7         now?
 8   A.    I do.
 9   Q.    Okay.  Now, again, if you would, please, on page 5 -- now we
10         don't need you to read it into the record, we've made it an
11         exhibit.  There's two sentences in paragraph 3, correct?
12   A.    Correct.
13   Q.    The first sentence says that these two deputies notified you
14         that on October 30th, HydroWorld was still open for business;
15         do you agree with that?
16   A.    Yes.
17   Q.    The second sentence says that two traffic stops were
18         conducted.  That sentence does not contain a date, does it?
19   A.    No, it's in the same paragraph.
20   Q.    I understand that, but you agree it does not contain a date?
21   A.    Right.
22   Q.    Okay.  Do you -- did you provide the Magistrate any
23         information other than what's in your affidavit?
24   A.    No.
25   Q.    No other notes, no sworn testimony, nothing?
```

```
 1  A.  No, sir.
 2  Q.  Okay.  I want to go through the items seized.  You can use
 3      your return, if you want, but I'm going to be using your
 4      police report for now.  Item Number 1 you said was currency,
 5      and I take it that this item is from the safe?
 6  A.  I believe so, yes.
 7  Q.  And that's $5,040.00?
 8  A.  Yes.
 9  Q.  Can you describe for the Court, you mentioned multiple rooms,
10      if you could, just walk us through and give us the layout of
11      the floor plan?
12  A.  When you walk in the door, there's a short hallway with a
13      door and an office to the right, and if you continue straight
14      through, it opens into a bigger room with another door and
15      office to the right.
16  Q.  And that's -- that's the floor plan?  That's it?
17  A.  Yes.
18  Q.  Okay.  So earlier when you said there were multiple rooms,
19      you didn't know that when you were standing outside, correct?
20  A.  I could see that there was a room to the right, and that the
21      -- when you go in to the larger area, it curves to the right
22      and I couldn't see around the corner to know what else --
23      what else was back there.
24  Q.  So from outside at the door, you knew there was a -- at least
25      one room, because you could see the door?
```

```
 1                THE COURT:  I'm sorry, how much was that?
 2                MR. BOSTIC:  $195.00.
 3                THE COURT:  Okay.  And that wasn't taken off
 4     anybody, that was just found in the office to the right?
 5                THE WITNESS:  Correct.
 6                THE COURT:  Okay.  Thank you.
 7                MR. BOSTIC:  I have no further questions, your
 8     Honor.
 9                THE COURT:  All right.  Thank you.
10                Any other questions here, Mr. Bramble?
11                       REDIRECT EXAMINATION
12  BY MR. BRAMBLE:
13  Q.   I just want to be clear.  This execution of the search
14       warrant occurred on October 30th of 2013?
15  A.   Yes.
16                MR. BRAMBLE:  Okay.  Nothing further, your Honor.
17                THE COURT:  Any other questions, Mr. Bostic?
18                MR. BOSTIC:  Nothing based on that, your Honor.
19                THE COURT:  You may step down, Officer.  Thank you.
20                THE WITNESS:  Thank you.
21                (At 5:32 p.m., witness excused)
22                THE COURT:  Do you have any other witnesses you
23     wish to call today, Mr. Bramble?
24                MR. BRAMBLE:  No, your Honor.
25                THE COURT:  Mr. Bostic, any testimony from the
```

```
 1  Defense today?
 2       MR. BOSTIC:  No evidence, your Honor.
 3       THE COURT:  Okay.  Mr. Bramble?
 4       MR. BRAMBLE:  Your Honor, at this time we'd move to
 5  bind the Defendant over on the charges set forth in the
 6  Complaint and Information.
 7       THE COURT:  Mr. Bostic?
 8       MR. BOSTIC:  Well, your Honor, I'm looking at the
 9  Complaint.  It says, "Possession with intent to deliver the
10  controlled substance marijuana."  We have some very brief
11  testimony that something in the building was field tested,
12  but we don't know exactly what.  We don't know what room it
13  was in.  We don't really know what room anything was in,
14  except maybe that last item of money.
15       We don't have any testimony from this witness that
16  Mr. Gonzalez had possession or even constructive possession.
17  There's zero explanation for why he's on the premises.  The
18  only thing is that he asked for the search warrant to be
19  displayed; can't hold that against him.  The only other
20  testimony that puts any words out of his mouth is that I
21  don't have access to the safe.
22       So then that brings us along to manufacturing.
23  There's been no testimony that any marijuana was being
24  manufactured at all.  The officer testified to what he called
25  22 clones, that's really not explained, it's not described,
```

```
STATE OF MICHIGAN)
                 ) SS
COUNTY OF KENT   )
```

      I hereby certify that this transcript, consisting of 39 pages, is a complete, true, and correct transcript, transcribed to the best of my ability, of the proceedings taken in this case on Wednesday, November 13, 2013.

Dated:   December 6, 2013         *Amanda L. Dubay*
                                              Amanda L. Dubay, CER-5136
                                              Certified Electronic Recorder

                                              63rd District Court
                                              1950 E. Beltline Avenue, N.E.
                                              Grand Rapids, Michigan 49525
                                              616.632.7820
                                              *amanda.dubay@kentcountymi.gov*