UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

DANIEL DARIO TREVINO,
DANIEL VERNELL CORBIN, and
DANIEL LEE BACHELDER,

      Defendants.
_____/

Case No. 1:18-cr-166

Hon. Paul L. Maloney
United States District Judge

## BRIEF IN SUPPORT OF GOVERNMENT'S MOTION IN LIMINE REGARDING PROSPECTIVE DEFENSES

Defendants are charged with conspiracy to manufacture, distribute, and possess with intent to distribute marijuana, manufacture of marijuana, and maintaining a drug-involved premises. The government believes that the Defendants will attempt to claim that they were growing marijuana for medicinal purposes and that they were in compliance with the Michigan Medical Marijuana Act (MMMA), Mich. Comp. Laws § 333.26421 *et seq.* Defendants may also suggests that one or more law enforcement officials were aware of their conduct and approved it. One or more defendants may then ask the jury to acquit them on these grounds. In addition to these arguments, it is possible that one or more defendants will attempt to induce the jury to engage in nullification, *i.e.* to simply refuse to apply the law as instructed by the Court, choosing instead "to acquit out of compassion or compromise or because of their assumption of a power which they had no right to exercise, but to which they were disposed through lenity." *Standefer v. United States*, 447 U.S. 10, 22 (1980) (internal quotations and citations omitted).

Testimony, evidence, and arguments relating to these issues would be irrelevant and therefore, inadmissible. Fed. R. Evid. 401 and 402. Furthermore, testimony, evidence and arguments along these lines would be inadmissible under Fed. R. Evid. 403 because it would be unfairly prejudicial to the government, confusing and misleading to the jury, and a waste of the Court's time.

"A motion in limine is 'made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'…It is 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" *United States v. Walsh*, 654 F.App'x 689, 693 (6th Cir. 2016) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Louzon v. Ford Motor Co.*, 718 F.3d556, 561 (6th Cir. 2013)).

Accordingly, to streamline the trial, the government respectfully asks this Court to issue an order that precludes testimony, evidence, and argument asserting or suggesting, as a full or partial defense, any of the following: 1) medical necessity; 2) compliance with the MMMA; 3) any defendant's subjective believe that his conduct was lawful or that an attorney told him his conduct was lawful; 4) entrapment by estoppel; and 5) jury nullification.

## I. BACKGROUND

Daniel Dario Trevino is the owner and operator of Hydro World, LLC ("Hydroworld"), a marijuana dispensary that was operating in violation of state and federal law dating back to at least 2010. Hydroworld operated marijuana dispensaries around Michigan, including in the cities of Lansing, Grand Rapids, Jackson, Flint, and Mount Pleasant. Trevino's co-defendants – Dolores Lopez, Daniel Corbin, and Daniel Bachelder – as well as others, helped Trevino run, staff, and manage the various Hydroworld locations.

Through Hydroworld, individuals wishing to be placed on the Michigan Medical Marijuana Act ("MMMA") patient registry could attend a Hydroworld "clinic" to see a physician, who would review patient medical records and fill out paperwork to certify whether the patient had one of the debilitating medical conditions that qualified the patient to possess marijuana under the MMMA for medical purposes. Hydroworld also dispensed marijuana. Individuals wishing to purchase marijuana could go to Hydroworld to purchase various strains of marijuana, marijuana edibles, and other marijuana-infused products. Trevino solicited growers and purchased marijuana in bulk to supply the Hydroworld retail locations. Trevino and his associates also grew marijuana to supply the Hydroworld retail locations. In short, the defendants acted as middlemen to expand the roll of individuals registered under the MMMA and to profit off the sale of marijuana, in violation of federal law and state law.

Beginning in 2011, law enforcement has executed searches at various Hydroworld retail locations and other locations linked to the charged conspiracy. These searches have resulted in the seizure of marijuana, business records that document Hydroworld's sale and distribution of marijuana, and other evidence relevant to the charged conspiracy. These searches have also led to a number of instances of contact between the defendants and law enforcement.

On October 10, 2018, defendant Dolores Lopez pled guilty to the conspiracy charged in count one of the indictment, pursuant to a plea agreement. The guilty plea was taken by Magistrate Judge Timothy P. Greeley. A report and recommendation has since issued.

## II.     ARGUMENT

**A.     The Court Should Preclude the Defense of Medical Necessity**

There is some possibility that one or more defendants will attempt to assert a necessity defense. They may, for example, testify or elicit testimony that they were providing marijuana to someone in order to treat a serious medical condition.

> In essence, a "necessity defense, like other justification defenses, allows a defendant to escape responsibility despite proof that his actions encompassed all the elements of a criminal offense."…This defense is limited to rare situations and should be "construed very narrowly."

*United States v. Ridner*, 512 F.3d846, 849 (6th Cir. 2008) (quoting *United States v. Maxwell*, 254 F.3d 21, 27 (1st Cir. 2001); *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990)).

No defendant should be allowed to offer testimony, evidence, or argument relating to this defense. Marijuana is a Schedule I controlled substance. 21 U.S.C. § 812(c)(c)(10) (initial schedule of controlled substances); 21 C.F.R. § 1308.11(d)(23). The Supreme Court has held that "medical necessity is not a defense to manufacturing and distributing marijuana." *United States v. Oakland Cannabis Buyers Co-Op.*, 532 U.S. 483, 494 (2001).

> Although state law may permit marijuana use for medicinal purposes under defined circumstances, federal law treats any possession, distribution, or manufacture of marijuana as a federal offense, and medical necessity is not a defense to a federal criminal prosecution for manufacturing or distributing marijuana.

*United States v. Brown*, 801 F.3d 679, 693 (6th Cir. 2015) (citing *Oakland Cannabis Buyers' Coop.*, 532 U.S. at 493 – 94), *rev'd on other grounds*, 828 F.3d 375 (6th Cir. 2016). Accordingly, no defendant may rely on a defense of medical necessity in this case.

**B.     The Court Should Preclude Defenses Based on Compliance with the MMMA**

In the government's view, the defendants' conduct was not even remotely in compliance with the MMMA.[1] Nevertheless, the defendants are likely to argue, present evidence, or in some

---

[1] For example, under the MMMA, a caregiver "may not assist more than 5 qualifying patients with their medical use of marijuana." Michigan Dept. of Licensing and Regulatory Affairs, Rule 333.115(1). But the

4

manner suggest that their conduct was in compliance with the MMMA. The defendants' compliance or non-compliance with the MMMA is irrelevant to this case. Evidence, testimony, or argument relating to this subject should be inadmissible. Marijuana is a Schedule I controlled substance. Accordingly, it is unlawful under federal law to manufacture marijuana, distribute marijuana, possess marijuana with intent to distribute it, possess marijuana, or conspire with others to do any of these things. 21 U.S.C. §§ 841(a)(1), 844, 846. Even under Michigan law and the passage of the MMMA, it remains illegal to manufacture, distribute, or possess with intent to distribute marijuana. Mich. Comp. Laws § 333.7401(2)(d). It also remains illegal to possess marijuana. Mich. Comp. Laws § 333.7403(1)(d). *See United States v. Ellis*, 910 F.Supp.2d 1008, 1017 (W.D. Mich. 2012) ("regardless of whether Ellis has, or does not have, a license under the MMMA, it is still a crime under both Michigan and federal law to manufacture marijuana."); *People v.*, 799 N.W.2d184, 199 – 200 (Mich. App. 2010) (O'Connell, P.J. concurring) ("The MMMA does not repeal any drug laws contained in the Public Health Code, and all persons under this state's jurisdiction remain subject to them…The MMMA does not codify a *right* to use marijuana; instead, it merely provides a procedure through which seriously

---

defendants, through Trevino's Hydroworld, were selling marijuana to anyone who had an MMMA patient card regardless of the MMMA's requirement that marijuana distribution only take place within the narrow context of a caregiver-patient relationship.

In addition, under the MMMA and associated regulations, a caregiver may only "receive compensation for costs associated with assisting a registered qualifying patient in the medical use of marijuana." This compensation "shall not constitute the sale of a controlled substance." Michigan Dept. of Licensing and Regulatory Affairs, Rule 333.115(2). Trevino and his coconspirators were selling marijuana for as much as $250 per ounce.

"The strict language of the [MMMA] probably does not allow a registered patient or caregiver to assist another caregiver in any activity that requires possession or control of the marijuana or access to the enclosed, locked facility where it must be cultivated." Robert Hendricks and Benham Wrigley, Jr., *Caregiving as a Business Under the Michigan Medical Marijuana Act*, Michigan Bar Journal, Aug. 2016 at 17. "In short, a caregiver business under the [MMMA] will probably be a solitary undertaking, with no legal authority to include any other person in most aspects of the business activity." *Id.* In this case, Trevino and his co-conspirators worked together to mass produce and distribute marijuana, in violation of the MMMA.

Trevino and his co-conspirators set up a business to produce and sell large amounts of marijuana for profit. They used the MMMA as a ruse to create the impression that their activities were legitimate under Michigan law.

ill individuals using marijuana for its palliative effects can be identified and protected from prosecution under state law.").[2] To the extent federal law conflicts with state law, federal law controls. "The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail." *Gonzalez v. Raich*, 545 U.S. 1, 29 (2005); *see also United States v. Hicks*, 722 F.Supp. 2d 829, 833 (E.D. Mich. 2010) ("It is indisputable that state medical marijuana laws do not, and cannot, supersede federal laws that criminalize the possession of marijuana.") Thus federal law governs in this case, regardless of the MMMA. Any claims a defendant may raise regarding his compliance with the MMMA is irrelevant and inadmissible.

**C.    Ignorance of the Law or Advice of An Attorney is No Defense**

In this case, one or more defendants may claim that he *thought* his conduct was lawful. He may attach this claim to advice he supposedly received from an attorney, or simply as an assertion of his belief or understanding of the law. As a general principle of criminal law, ignorance of the law or mistake of law is no defense. *See Cheek v. United States*, 498 U.S. 192, 199 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system.").

Counts three and five allege that Trevino and Corbin manufactured marijuana. This is a general intent crime. *United States v. Barnes*, No. 16-1188, 2017 WL 375629, at *5 (6th Cir. Jan. 26, 2017). "General-intent crimes require that a defendant 'knowingly' committed the

---

[2]    Furthermore, the MMMA provides that qualifying patients and caregivers "shall not be subject to arrest, prosecution, or penalty in any manner," provided they are in compliance with the requirements of the Act. Mich. Comp. Laws § 333.26428(a), patients and caregivers "may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana." The protections of the MMMA are characterized as an "affirmative defense." *Redden*, 799 N.W.2d at 200 (O'Connell, P.J. concurring) ("the MMMA functions as an affirmative defense to prosecutions under the Public Health Code"); *Casias v. Wal-Mart Stores, Inc.*, 764 F.Supp.2d 914, 922 (W.D. Mich. 2011) (the MMMA "provides an affirmative defense and other similarly limited protections in the face of criminal proceedings.").

criminal act. This intent requirement goes to whether the defendant knew he was engaging in the act, not whether the defendant knew that his actions were illegal." *Id*. Similarly, with the maintaining a drug-involved premises charges in counts two, six, seven, and eight, the government is not required to prove that the defendants had the intent to manufacture, distribute, or use a controlled substance under this statute. *United States v. Tebeau*, 713 F.3d 955, 960 (8th Cir. 2013); (*United States v. Tamez*, 941 F.2d 770 (9th Cir. 1991) ("§ 856(a)(2) does not require proof that the defendant intended to use a property for a prohibited purpose"); *United States v. Wilson*, 503 F.3d 195, 198 (2d Cir. 2007); *United States v. Bilis*, 170 F.3d 88, 92-93 (1st Cir. 1999); *United States v. Banks*, 987 F.2d 463, 466 (7th Cir. 1993); *United States v. Chen*, 913 F.2d 183 (5th Cir. 1990) ("Under § 856(a)(2) the person who manages or controls the [property] and then rents to others[] need not have the express purpose in doing so that drug related activity take place," as long as "others have that purpose."). The statute "only requires that a defendant has the purpose of maintaining property where drug use take place, and not that the defendant intends the drug use to occur." *Tebeau*, 713 F.3d 955. Thus, with respect to the manufacturing and maintaining a drug-involved premises charges, Trevino and Corbin's belief in the legality of their actions is irrelevant.

The same is true with regard to the remaining charges. The remaining counts charge conspiracy to manufacture, distribute, and possess with the intent to distribute marijuana and possession with intent to distribute marijuana. These are specific intent crimes. To convict Trevino, Corbin, and Bachelder of these charges, the government must prove either intent to distribute marijuana or intent to join the conspiracy. But these charges do not require the government to prove that Trevino, Corbin, and Bachelder intended to violate a law or even knew that his conduct would violate the law. Ignorance of the law is no defense. *Ratzlaf v. United*

*States*, 510 U.S. 135, 149 (1994). Thus, with regard to the specific intent charges in this case, Trevino, Corbin, and Bachelder's belief in the legality of their own actions is irrelevant.

Similarly, advice defendants might have received from an attorney does not alter these basic conclusions. Reasonable reliance on the advice of counsel is a defense to an offense that has willfulness as an element. *Williamson v. United States*, 207 U.S. 425, 453 (1908). But, as noted in this case, the government is not required to prove that Trevino, Corbin, or Bachelder intended to violate the law. Accordingly, advice defendants might have received from an attorney is irrelevant. *See United States v. Stacy*, 734 F.Supp.2d1074, 1083 (S.D. Cal. 2010) (advice of counsel defense not available to defendant in federal drug case).

Thus, any belief defendants might have had about the legality of their conduct – whether based on their own understanding of the law or advice of counsel – is irrelevant and inadmissible.

**D.      Entrapment by Estoppel Does Not Apply**

Defendants had contact with numerous law enforcement officials on numerous occasions over the course of the conspiracy. To the government's knowledge, no law enforcement official opined on the legality of Trevino and his co-conspirator's marijuana manufacturing and distribution operations.

As noted in Instruction 6.09 of the *Sixth Circuit Criminal Pattern Jury Instructions* (July 17, 2018), entrapment by estoppel is an affirmative defense. The Committee Commentary associated with this instruction states that a defendant "bears the 'threshold evidentiary burden' to prove he is entitled to an instruction on the defense." *Id.* (quoting *United States v. Triana*, 468 F.3d 308, 315 n.3 (6th Cir. 2006)). If defendant satisfies this initial burden, he would be entitled to a jury instruction on the defense of entrapment by estoppel. He would have to show

8

(a) that an agent of the U.S. Government told him that his activity was legal, (b) that he relied on this announcement, (c) that his reliance was reasonable, and (d) that, given his reliance, a conviction would be unfair. *Id.*

The government is not aware of evidence or information that would justify an instruction on entrapment by estoppel. In addition, Trevino and his co-conspirators have not identified any such information. Accordingly, absent the requisite showing by defendants, any testimony, evidence, questioning, and argument relating to this defense would be irrelevant and inadmissible.

**E.     Defendants Should Not Be Allowed to Pursue Jury Nullification**

The government recognizes that this case touches on an issue that is the subject of ongoing debate in this country: the legalization of marijuana for medical or recreational uses. Given this backdrop, defendants may ask the jury to consider this larger debate when reaching their verdict. One or more defendants may, for example, attempt to argue that 1) his actions were helping people and that his intent was to help people; 2) that marijuana has medicinal qualities that are not taken into account by federal law, 3) that marijuana should not be classified as a Schedule I controlled substance, 4) that federal law criminalizing marijuana trafficking should be ignored in light of the more recent MMMA. These topics are not relevant to a lawful defense, nor do they rebut any element of the offenses charged in the Indictment. Instead, these arguments are simply invitations to jury nullification.

A jury's "duty is to apply the law as interpreted by the court and they should be so instructed." *United States v. Avery*, 717 F.2d 1020, 1027 (6th Cir. 1983). "A federal criminal trial is not a forum for a policy debate, especially the policy underlying the federal criminal drug laws." *United States v. Duval*, 865 F.Supp.2d 803, 806 (E.D. Mich. 2012). Accordingly, the

9

government requests that the defendants be ordered not to argue jury nullification, or refer to issues that are aimed at nullification.

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant this motion in limine.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: October 15, 2018

/s/ Joel S. Fauson
JOEL S. FAUSON
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404