UNITED STATES OF AMERICA

IN THE WESTERN DISTRICT OF MICHIGAN

United States of America,   File No. 1:18-cr-166
    Plaintiff,

v.   Hon. Paul L. Maloney
    U.S. District Court Judge

Daniel Dario Trevino (D-1)
    Defendant.
_____/

## MOTION TO QUASH THE INDICTMENT DUE TO FEDERAL FUNDING PROHIBITIONS

Attachment 3 – Unpublished Eastern District Case, ***United States v. Ragland***, E.D. #15-cr-20800 (June 26, 2017)

2017 WL 2728796
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan,
Southern Division.

UNITED STATES of America, Plaintiff,
v.
D-1, Joshua RAGLAND, Defendant.

Case No. 2:15-cr-20800
|
Signed 06/26/2017

**Attorneys and Law Firms**

Susan E. Gillooly, Linda Aouate, U.S. Attorney's Office, Detroit, MI, for Plaintiff.

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR INJUNCTIVE RELIEF [51], AND FINDING MOOT DEFENDANT'S MOTION TO COMPEL [62], AMENDED MOTION TO COMPEL [63], AND MOTION FOR DISCLOSURE [65]**

STEPHEN J. MURPHY, III, United States District Judge

*1 The Government charged Defendant Joshua Ragland in a four-count indictment with Count One: manufacture of a destructive device, 26 U.S.C. § 5861(f); Count Two: possession of an unregistered destructive device, 26 U.S.C. § 5861(d); Count Three: possession of a destructive device by a prohibited person, 18 U.S.C. § 922(g)(3); and Count Four: possession of explosive materials by a prohibited person that created a substantial risk of injury to another person, including a public safety officer performing duties, 18 U.S.C. §§ 842(i)(3), 844(f)(2). Ragland asks the Court to enjoin the prosecution of Counts Three and Four. For the reasons stated below, the Court will deny the motion.

## BACKGROUND

The Government alleges the following facts. An explosion near Ragland's property injured a 29-year-old man. While investigating the explosion, the police searched Ragland's home and premises. They recovered five manufactured destructive devices, and explosive material similar to black powder. Also, the officers discovered marijuana plants growing in Ragland's enclosed backyard, and marijuana plants that were "curing" in his basement.

The Government alleges that Ragland manufactured the destructive devices by filling small, metal $CO_2$ cartridges with the explosive material and connecting them to a Christmas bulb, speaker wire, 9-volt battery, and metal connectors. According to the Government, Ragland attached the devices to trip wires and planted them in his yard, a nearby alley, and near his fence. Additionally, the Government contends that Ragland placed broken glass, boards with protruding nails, and additional trip wires in the same areas. The Government submits that Ragland told officers that he possessed a medical marijuana card, he used marijuana on a regular basis, and he planted the explosive devices to deter others from stealing his marijuana. ECF 60, PgID 197.

## DISCUSSION

In a 2014, Congress passed an appropriations rider that related to federal marijuana prosecutions. Pub. L. No. 113-235, 128 Stat. 2130, § 538. It provided that "[n]one of the funds made available in this Act to the Department of Justice may be used, with respect to [medical marijuana states including Michigan] to prevent such States from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." *Id.* Congress passed essentially the same rider in 2015; it became commonly known as "§ 542." Pub. L. No. 114-113 § 542, 129 Stat. 2242, 2332–33 (2015). Section 542 remains in effect today.

Ragland argues that § 542 prohibits the DOJ from spending funds to prosecute him on Counts Three and Four, which require the use of marijuana as an element of proof. According to Ragland, his use of marijuana is legal under Michigan's Medical Marijuana Act, Mich. Comp. Laws § 333.26422. Since § 542 bars DOJ from spending funds to prevent implementation of Michigan's laws that authorize the "use ... of medical marijuana," Ragland reasons that § 542 therefore bars DOJ from spending funds to prosecute him for Counts Three and Four.

*2 At the outset, the Court notes that Ragland seeks an extraordinary form of relief. "In almost all federal criminal prosecutions, injunctive relief will not be appropriate." *United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016). Generally, federal courts refuse to enjoin federal criminal prosecutions absent "exceptional circumstances." *Ackerman v. Int'l Longshoremen's & Warehousemen's Union*, 187 F.2d 860, 863 (9th Cir. 1951) (reversing district court's injunction of criminal prosecution); *see also Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 187 (3d Cir. 2006), *as amended* (May 16, 2006) (reversing district court's criminal prosecution injunction because "non-prosecution agreements may not form the basis for enjoining indictments before they issue"); *Deaver v. Seymour*, 822 F.2d 66, 68 (D.C. Cir.

1987) (holding that "extraordinary circumstances where the danger of irreparable loss" of a constitutional right is "both great and immediate" may justify an injunction of a criminal prosecution) (quoting *Fenner v. Boykin*, 271 U.S. 240, 243 (1926)).

The Government argues, however, that § 542 "contains no express grant of authority to enforce the provision." ECF 60, PgID 203–04. The argument is unavailing because a "court sitting in equity cannot 'ignore the judgment of Congress, deliberately expressed in legislation.' " *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001) (quoting *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 551 (1937)). "It is 'emphatically ... the exclusive province of the Congress not only to formulate legislative policies and mandate programs and projects, but also to establish their relative priority for the Nation. Once Congress, exercising its delegated powers, has decided the order of priorities in a given area, it is for ... the courts to enforce them when enforcement is sought.' " *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978).

Contrary to the Government's assertion, therefore, an injunction may certainly be warranted when a federal criminal prosecution runs afoul of a Congressional appropriation of funds. *McIntosh*, 833 F.3d at 1175. The Appropriations Clause provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law[.]" U.S. Const. art. I, § 9, cl. 7. "The Appropriations Clause plays a critical role in the Constitution's separation of powers," *McIntosh*, 833 F.3d at 1175, because it ensures "that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 425 (1990). "[I]f DOJ were spending money in violation of § 542, it would be drawing funds from the Treasury without authorization by statute and thus violating the Appropriations Clause." *McIntosh*, 833 F.3d at 1175. Therefore "federal criminal defendants may seek to enjoin the expenditure of those funds[.]" *Id.* at 1173–74.

In *McIntosh*, the Ninth Circuit consolidated appeals from numerous federal criminal defendants indicted for various infractions of the Controlled Substances Act (CSA): conspiracy to manufacture, to possess with intent to distribute, and to distribute more than 1,000 marijuana plants in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A); and maintaining a drug-involved premise, possessing a firearm in furtherance of a Title 21 offense, and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A)(i), and 21 U.S.C. §§ 841, 856(a)(1). 833 F.3d at 1169. The district courts denied the defendants' motions to enjoin the prosecutions. But the *McIntosh* court reversed, and determined that "§ 542 prohibits DOJ from spending money on actions that prevent the Medical Marijuana States' giving practical effect to their state laws that authorize the use, distribution, possession, or cultivation of medical marijuana." 833 F.3d at 1176.

**\*3** The Sixth Circuit has not directly addressed whether § 542 bars federal marijuana prosecutions. But at least one respected judge on our court followed the Ninth Circuit's approach. *See United States v. Samp*, No. 16-CR-20263, 2017 WL 1164453, at \*2 (E.D. Mich. Mar. 29, 2017). In *Samp*, the Government charged the defendant with possession of a firearm while being an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3). *Id.* The Court noted that "[a]lthough the Government is not attempting to directly prosecute [the defendant] for his medical marijuana business, which would be in direct violation of § 542, [the § 922(g)(3) charge] accomplishes materially the same effect. Accordingly, if [defendant] fully complied with the Michigan medical marijuana law, then the Government's prosecution of [§ 922(g)(3) ] is in violation of § 542." *Id.* After an evidentiary hearing, the *Samp* court determined that the defendant had not strictly complied with Michigan's medical marijuana laws and denied the motion for an injunction. *Id.* at \*8.

Both *McIntosh* and *Samp* are thoughtful and persuasive opinions. But one key factor distinguishes both of those cases from Ragland's: in both *McIntosh* and *Samp*, the Government had charged the defendants with conduct that—but for the element of marijuana use—would have been completely legal. For example, in *Samp*, the court noted that "[t]he Government has not alleged that [defendant's] possession of the firearms was unlawful apart from his medical marijuana business." *Samp*, 2017 WL 1164453, at \*2. The same was true in *McIntosh*: the Government charged the defendants with possession of marijuana in violation of the CSA and with use of a firearm in furtherance of a crime under the CSA. In both of those cases, the courts correctly determined that § 542 barred the DOJ prosecutions.

Not so here. Unlike in *McIntosh* and *Samp*, the Government does not seek to prosecute Ragland for conduct that is otherwise legal but for the element of marijuana use. Rather, in Counts Three and Four, Ragland is charged with possession of a destructive device by a prohibited person, 18 U.S.C. § 922(g)(3), and possession of explosive material by a prohibited person that created a substantial risk of injury to another person, including a public safety officer performing duties, 18 U.S.C. §§ 842(i)(3), 844(f)(2). Even without the element of marijuana use, the Government alleges that Ragland *still* engaged in illegal conduct: the possession of an unregistered destructive device and creation of a substantial risk of injury through the use of an explosive device. Thus, the prosecution of Counts Three and Four here pose no violation of § 542.

Indeed, prosecution for Counts Three and Four may

actually assist the State of Michigan to carry out its medical marijuana statutory scheme, rather than prevent it. Specifically, the Government has alleged that Ragland manufactured and planted explosive traps to protect his marijuana crops from thieves, and that one of the devices exploded and injured someone. The conduct alleged is extraordinarily dangerous; the State of Michigan would undoubtedly want to deter other medical marijuana growers from taking similar measures and potentially hurting others. Thus, by protecting the public from a particularly dangerous practice used by one medical marijuana grower, the prosecution here may set the conditions for a more safe and well-regulated implementation of Michigan's medical marijuana laws.

In any event, the Government does not seek to impose criminal liability on conduct that would otherwise be wholly legal under Michigan's medical marijuana laws, like the marijuana possession or firearms ownership in *McIntosh* and *Samp*. As a result, the Court finds that the DOJ's prosecution of Ragland for Counts Three and Four does not "prevent [Michigan] from implementing [its] own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." § 542. And injunctive relief is not appropriate. The motion will be denied.

**\*4** The issue resolved is subtle, unusual, and would seem to lend itself to interlocutory appellate review. *See McIntosh*, 833 F.3d 1170–71.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Motion for Injunctive Relief [51] is **DENIED**.

**IT IS FURTHER ORDERED** that for reasons stated on the record June 1, 2017 and by stipulation of the parties, the Court finds as **MOOT** Defendant's Motion to Compel [62], Amended Motion to Compel [63], and Motion for Disclosure [65].

**SO ORDERED**.