UNITED STATES OF AMERICA

IN THE WESTERN DISTRICT OF MICHIGAN

United States of America,                                      File No. 1:18-cr-166
     Plaintiff,

       v.                                                          Hon. Paul L. Maloney
                                            U.S. District Court Judge

Daniel Dario Trevino (D-1),
     Defendant.

_____/

| | |
|---|---|
| Joel S. Fauson | J. Nicholas Bostic P40653 |
| Assistant United States Attorney | Attorney for Defendant Trevino |
| P.O. Box 208 | 909 N. Washington Ave. |
| Grand Rapids, MI 49501-0208 | Lansing, MI 48906 |
| 616-456-2404 | 517-706-0132 |

_____/

## DEFENDANT DANIEL TREVINO'S (D-1) MOTION TO DISMISS FOR FIRST AMENDMENT AND FOURTEENTH AMENDMENT VIOLATIONS

## CERTIFICATE OF COMPLIANCE

## CERTIFICATE OF SERVICE

### Oral argument requested

  Defendant Trevino, for his motion, states:

1.   For the duration of the alleged conspiracy and beyond, members of the Drug Enforcement Administration, Michigan State Police, the Lansing Police Department, and other agencies conducted traffic stops, search warrants, and investigations into Mr. Trevino because of Mr. Trevino's exercise of his rights under the First Amendment to advocate for a change in the laws regarding marihuana.

2.   For the duration of the alleged conspiracy and beyond, members of the Drug Enforcement Administration, Michigan State Police, the Lansing Police Department and other agencies

conducted traffic stops, search warrants, and investigations into Mr. Trevino to enhance their funding.

3.    For the duration of the alleged conspiracy and beyond, members of the Drug Enforcement Administration, Michigan State Police, Lansing Police Department and other agencies conducted traffic stops, search warrants, and other investigations on Mr. Trevino while ignoring similarly situated individuals who did not advocate for changes in the laws pertaining to marihuana and who were not of Hispanic origin.

4.    The police officers employed by the Michigan State Police, Lansing Police Department and other municipal agencies in the State of Michigan are now acting in privy with and as agents of the United States Attorney's Office for the Western District of Michigan by virtue of the current indictment.

5.    The police officers employed by the Michigan State Police, Lansing Police Department and Jackson Police Department sought the assistance of the United States Attorney's Office and the Drug Enforcement Administration in retaliation for Mr. Trevino's use of the judicial system to dispute and prevail in challenges to several forfeiture cases brought by those agencies and his filing of an action against members of the Jackson Police Department and the Jackson Narcotics Enforcement Team under 42 U.S.C. §1983.

6.    A criminal prosecution cannot be used to suppress a citizen's rights under the First Amendment to the United States Constitution.

7.    A criminal prosecution cannot be used to retaliate against a citizen for the lawful use of access to the courts and for prevailing against governmental actors.

WHEREFORE, Mr. Trevino respectfully requests that this Court grant an evidentiary hearing on this motion and dismiss all counts in the superseding indictment against Mr. Trevino.

6/24/2019          */s/ J. Nicholas Bostic*
Date             J. Nicholas Bostic P40653
               Attorney for Defendant Trevino

UNITED STATES OF AMERICA

IN THE WESTERN DISTRICT OF MICHIGAN

United States of America,                           File No. 1:18-cr-166
     Plaintiff,

     v.                                            Hon. Paul L. Maloney
                                     U.S. District Court Judge

Daniel Dario Trevino (D-1),
     Defendant.
_____/

Joel S. Fauson                                      J. Nicholas Bostic P40653
Assistant United States Attorney                    Attorney for Defendant Trevino
P.O. Box 208                                        909 N. Washington Ave.
Grand Rapids, MI 49501-0208                         Lansing, MI 48906
616-456-2404                                        517-706-0132
_____/

## BRIEF IN SUPPORT OF DEFENDANT DANIEL TREVINO'S (D-1) MOTION TO DISMISS FOR FIRST AMENDMENT AND FOURTEENTH AMENDMENT VIOLATIONS

### TABLE OF CONTENTS

Table of authorities ....................................................................................................................v

Facts .........................................................................................................................................1

Argument ..................................................................................................................................7

Conclusion ..............................................................................................................................19

Relief requested ......................................................................................................................19

Certification of compliance with local rule ............................................................................20

Certificate of service ..............................................................................................................20

Index of attachments ...............................................................................................................21

# TABLE OF AUTHORITIES

CONSTITUTIONAL PROVISIONS

U.S. Const., Am. I.................................................................................................7

UNITED STATES SUPREME COURT

*Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009)..................................

*Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)...............................11

*Butterworth v. Smith*, 494 U.S. 624, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990) ........................9

*Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)................................9

*Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)....................9

*Garrison v. Louisiana*, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) .............................9

*Gentile v. State Bar of Nev*., 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991)............9

*Hartman v. Moore*, 547 U.S. 250, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) ..........................10

*Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).............................17

*Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274,
    97 S.Ct. 568, 50 L.Ed.2d 471 (1977) .................................................................10

*N. Y. Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) ...................9

*Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)......................9, 10

*Snyder v. Phelps*, 562 U.S. 443, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011) ..............................9

*United States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) ..................11

*United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d (1980) ..................17

*Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)....................16

SIXTH CIRCUIT

*Barnes v. Wright*, 449 F.3d 709 (6th Cir. 2006) ....................................................10

***Farm Labor Organizing Committee v. Ohio State Highway Patrol***,
    308 F.3d 523 (6th Cir. 2002) ...............................................................16

***Gardner v. Evans***, 920 F.3d 1038 (6th Cir. 2019) ...................................12

***Holzemer v. Memphis***, 621 F.3d 512 (6th Cir. 2010) ...............................9

***Siggers–El v. Barlow***, 412 F.3d 693 (6th Cir. 2005) .................................8

***Thaddeus–X v. Blatter***, 175 F.3d 378 (6th Cir.1999) ............................8, 9

***United States v. Anderson***, 923 F.2d 450 (6th Cir. 1991) .......................16

***United States v. Andrews***, 633 F.2d 449 (6th Cir.1980) ...........................16

***United States v. Avery***, 137 F.3d 343 (6th Cir.1997) ...............................17

***United States v. Hazel***, 696 F.2d 473 (6th Cir.1983) ...............................15

***United States v. Taylor***, 956 F.2d 572 (6th Cir. 1992) ...........................16

***United States v. LaDeau***, 734 F.3d 561 (6th Cir. 2013) ..........................12

OTHER FEDERAL COURTS

***United States v. Berrios***, 501 F.2d 1207 (2d Cir.1974) ............................15

***United States v. Meyer***, 810 F.2d 1242 (D.C.Cir.1987) ............................11

***United States v. Silien***, 825 F.2d 320 (11th Cir.1987) .............................15

***United States v. Toushin***, 714 F.Supp 1452 (M.D. Tenn. 1989) ................11

***United States v. Wilson***, 639 F.2d 500 (9th Cir.1981) ..............................11

# FACTS

*Exercise of First Amendment Rights*

The search warrant affidavits for the five warrants for physical locations on May 3, 2016 (execution date) demonstrate a focus on protected speech by the Drug Enforcement Administration (DEA). The affidavit was sworn to by Special Agent Christopher Scott. The same affidavit was used for all five properties. One of them, 5300 S. Cedar Street was no longer in use and 2404 Fielding Drive was Mr. Corbin's residence. The remaining three were for Hydroworld locations.

After five introductory paragraphs explaining Agent Scott's background, identifying the crimes, and describing the five properties, paragraph 6 immediately highlights the DEA focus.

> 6. [. . .] TREVINO also has a marijuana education outreach platform that he refers to as HYDROCOLLEGE. TREVINO promotes HYDROWORLD and HYDROCOLLEGE through Facebook and via a web site.
> Search Warrant, ¶6, 1:16-MJ-120, PageID#__.

The next two paragraphs continue with the same focus.

> 7. TREVINO is an outspoken advocate of medical marijuana. TREVINO has uploaded multiple videos to YouTube to promote HYDROCOLLEGE and HYDROWORLD. The *Lansing State Journal* ran an article on him on December 31 2009 where he described himself as a "Professor of Pot". The *Lansing State Journal* reported in articles that appeared on April 20, 2010 and April 21, 2010 that TREVINO had opened Lansing's first marijuana dispensary. On November 20 2011 the Lansing State Journal reported that TREVINO spoke at the first-ever Medical Marijuana Expo Convention and Symposium held in Lansing. Articles on TREVINO and the fact he is the owner of HYDROWORLD medical marijuana dispensaries - which TREVINO prefers to call "medical marijuana service centers" -have appeared every year in the *Lansing State Journal* through 2014. Articles concerning TREVINO and the cultivation and distribution of marijuana have also appeared in the *Lansing City Pulse Oakland Press Mount Pleasants Morning Sun Jackson Citizen Patriot Hillsdale Daily News* and Owosso's *The Argus-Press*.
> 8. As recently as February 18, 2016 Daniel TREVINO was interviewed by WILX-TV regarding the issue of proliferating medical marijuana dispensaries in and around Lansing and the lack of enforcement of city ordinances concerning the dispensaries. In sum and substance, TREVINO stated that in addition to Lansing, he has shops in Jackson, Mount Pleasant, Grand Rapids, and Flint. TREVINO further noted that in terms of letting dispensaries operate with little to no oversight, no where is quite like Lansing.
> Search warrant, ¶¶ 8, 9.

Five additional paragraphs demonstrate that the DEA was focusing on the content of his message which included promoting medical marihuana and they are summarized as follows:

- A January 19, 2015 Facebook posting about Mr. Trevino's birthday, thanking the public for years of support, appreciating the support in spite of the raids, and appreciating the support in spite of personal attacks from City of Lansing officials and Attorney General Bill Schuette. ¶36.

- An April 29 2015 Facebook posting about a raid at the Flint center by the Flint Police Department, expressing an opinion about City Attorney Peter Bade's improper priorities (water situation), the availability of commercial drugs through drug stores versus the suppression of a medicinal plant, and an opinion that the State of Michigan should stop charging for medical marihuana patient cards if the police are not going to stop imposing their interpretation of the law on the citizens. He concluded it with a request that the message be shared as he started his fight with the City of Flint. ¶39.

- A June 19, 2015 Facebook posting about the number of persons Hydroworld had helped to obtain a medical marihuana card (400 people a month). ¶45.

- An August 10, 2015 Facebook video explaining how people could obtain their medical marijuana card. ¶49.

- An April 2, 2016 Facebook post thanking the public for their support and noting that on April 1, 2016, Hydroworld serviced a record 201 people. He also explained that he started as a grow store in 2003 and, after the medical marihuana act passed in 2008, Hydroworld had helped over 100,000 people obtain their medical marijuana card. ¶65

*The Michigan Attorney General and MSP Drug Teams Focus on Mr. Trevino*

The references to Bill Schuette refer back to when Mr. Schuette was elected Attorney General and Rick Snyder was elected governor in the fall of 2010. In the first wave of executive

reorganization orders, Governor Snyder transferred the implementation of the 2008 medical marihuana voter initiative from the Department of Community Health to the Department of Licensing and Regulatory Affairs (LARA). E-mails and memos obtained from LARA indicate that the transfer was to bring the implementation back into the scope of the "intent of the voters" although there was no suggestion as to how the bureaucrats knew that "intent." Attachment 1. In the spring and summer of 2011, the Jackson Narcotics Team and the Tri-County Metro Narcotics Team (operated by the Michigan State Police) began aggressively investigating Hydroworld locations by sending in undercover officers to obtain cards and purchase marihuana.

Even though the officers were told at each visit that they had to either have their card or that the time for LARA to respond had lapsed before they could purchase, they still continued their investigation and had their reports reviewed. Rather than have the reports reviewed by the respective county prosecutors, these reports were all sent to the Attorney General's Criminal Division in Detroit for review by an assistant attorney general. No state charges were ever filed against Mr. Trevino. See Attachment 2 (TCM) and Attachment 3 (JNET).

The lengths to which the police would go in this pursuit of Hydroworld include fabricating an MRI report and submitting it along with their applications for their cards and identifying the ordering physician as their physician on their application materials. See Attachment 4. Even though attempts to purchase without a card too early were rebuffed, the drug teams pursued their investigations.

On July 1, 2013, a search warrant was executed on Hydroworld in Jackson, Michigan. One of the items taken was a building sign. Supplemental reports are replete with references to the Attorney General's Office. See Attachment 5. On July 3, 2014, JNET officers responded to a call from the Jackson Police Department because an officer had confronted Mr. Trevino at the

temporarily closed Jackson Hydroworld location. The JNET officers seized a political flyer from a van Mr. Trevino had been travelling in that clearly urged voters to vote against Bill Schutte in the 2014 general election coming up in November. See Attachment 6. Over the years and various raids, JNET, TCM and other agencies would seize medical marihuana patient files and they refused to return them. Even when other physical property items were returned, these records would not be returned. The purpose of seizing and retaining the files was to prevent Mr. Trevino from being able to create mailing lists from those records so he could continue to express his First Amendment opinions and political interests.

*Supplemental funding for the teams*

The fact that the conspiracy count in the Indictment states "[f]rom in or about 2010 . . ." is not a coincidence and it is not surprising. As indicated above, the voter initiative had been in place for two years by the time Snyder and Schuette took office in January 2011. The date also matches the more restrictive implementation by LARA, the initiation of the MSP drug team investigations, and the referral of the police reports to the Attorney General's Office instead of local prosecutors.

The Edward Byrne Memorial Justice Assistance Grant (JAG) Program has been the primary source of federal funding to states for law enforcement programs including controlled substance enforcement. The state allocation for Michigan[1] over the years has been:

| 2005 | $11,221,742 | 2009 | $41,198,830 | 2013 | $6,550,517 | 2017 | $5,588,676 |
| 2006 | $6,793,169 | 2010 | $9,807,074 | 2014 | $6,250,670 | 2018 | $5,641,464. |
| 2007 | $10,181,924 | 2011 | $7,884,795 | 2015 | $5,466,651 | | |
| 2008 | $3,676,793 | 2012 | $6,449,224 | 2016 | $5,862,531 | | |

---

[1] The 2008 reduction was apparently the result of a political issue in Congress. A large increase occurred in fiscal 2009 to correct it and then the trend of smaller allocations continued.

On December 4, 2012, Mr. Trevino borrowed a 2002 Ford Explorer from Eloy Sanchez and was driving westbound on Interstate 96 from Lansing. The details of the illegal search and seizure of the vehicle and its contents are the subject of Motion to Suppress #6. R. 169, PageID#1453. This incident is important to this motion because Mr. Sanchez with the assistance of Mr. Trevino filed a claim for the vehicle challenging the seizure and impoundment. Ultimately, the towing and storage fee was greatly reduced to settle the case regarding the vehicle. Mr. Trevino filed a claim for the property inside the vehicle with the Ingham County Prosecutor's Office. That office declined to pursue a forfeiture and all property items were returned to Mr. Trevino along with his bond money on December 20, 2013. Records for this litigation will be presented at the hearing.

On June 6, 2013, Mr. Trevino was subjected to a pretext traffic stop on Interstate 69 in Eaton County by a member of the MSP Hometown Security Team at the direction of TCM. The trooper seized $9,137.00 from Mr. Trevino and gave him a forfeiture notice. Mr. Trevino filed a bond and claimed the money. The Ingham County Prosecutor's Office declined to pursue the forfeiture and all of the funds were returned to Mr. Trevino on September 9, 2013. The declination letter specifically concluded that the controlled substances possessed by Mr. Trevino were lawfully possessed under state law. See Attachment 7.

In July 2013, the Jackson County Prosecutor's Office filed a forfeiture action for $18,442.00 and Mr. Trevino had posted a bond and claimed the property from the July 1 and July 8, 2013 search warrant raids. On September 12, 2016, Mr. Trevino obtained a partial directed verdict and $7,163.00 and three items of personal property were returned to Mr. Trevino. The money had been illegally seized. On April 24, 2019, the state circuit judge issued a final opinion

against JNET and in favor of Mr. Trevino ordering all seized property returned to him along with the bond money and taxed costs.

In the fall of 2014, the Jackson County Prosecutor's Office filed a forfeiture action for $2,036.00 and Mr. Trevino had posted a bond and claimed the property. The matter was the subject of a motion to suppress and a bench trial in the fall of 2016. On March 14, 2017, the state circuit court issued an order suppressing the seized cash and granting a directed verdict. The directed verdict portion was reversed on appeal but on April 24, 2019, the state circuit judge entered a final judgment in favor of Mr. Trevino and against JNET requiring all the money to be returned to him and taxing costs.

In the fall of 2014, the Ingham County Prosecutor's Office initiated a forfeiture action as to $9,345.75. Mr. Trevino filed a claim and posted a bond. This was from a seizure that occurred on May 21, 2014 and was the subject matter of Motion to Suppress #3. The property had been seized out of a vehicle. All of the money and the bond were returned to Mr. Trevino after he filed an answer and challenged the legality of the seizure of the cash from the car.

After a pretext traffic stop on June 25, 2014, Mr. Trevino filed a bond and claim to $1,146.00 seized by TCM. As a result of his filing an answer and demanding discovery, a stipulation entered returning all of the property and his bond money to him.

As a result of the seizure of $2,036.00 from Mr. Trevino on July 1, 2014, he filed a civil action pursuant to 42 U.S.C. §1983 against a Jackson police officer, JNET, and two members of JNET in the Eastern District of Michigan. The lawsuit was filed on December 13, 2016 (3:16-cv-14338). Mr. Trevino settled with the Jackson officer before summary judgment stage. JNET was dismissed as a party on a Fed.R.Civ.P. 12 motion. The other two officers were granted summary judgment and Mr. Trevino appealed on November 18, 2018 (Sixth Circuit No. 18-2370). Mr.

Trevino settled with one of the JNET members soon after filing the appeal. Mr. Trevino recently settled the appeal and all seized cash and bond money were returned to him. This incident is the subject of motion to suppress #5. R.165, PageID#1114.

*The number of medical marihuana facilities creates a target rich environment*

Mr. Trevino is of Hispanic origin. Ghost Management Group, LLC has operated a website called Weedmaps.com which lists business that provide medical marihuana via retail in store, deliver, or sometimes even online. The website has been active for several years and can be found at https://weedmaps.com/earth/us/mi/lansing/48910. A competing entity is known as Leafly.com. A page from Leafly.com from March 2015 is at Attachment 6. One company listed in 2015 on Leafly.com was Pure Options on South Pennsylvania in Lansing. Its resident agent and owner is Sam Usman, Jr. He is not Hispanic. See Attachment 6 for the Pure Options website page as it existed on April attached LLC filings.[2] Pure Options' website has links to its Instagram, Twitter, and Facebook social media sites. Mr. Trevino will provide testimony at the hearing on this motion to establish that scores of shops existed from 2010 through 2018 in Lansing, Jackson, Flint, and Grand Rapids that were never raided by law enforcement. They were owned by Caucasians or perhaps other minorities but they were not Hispanic. Some of them advertised in various ways and were operated in the same general fashion as Hydroworld. None of them directly challenged the Michigan Attorney General or advocated as much for medical marihuana as Mr. Trevino and they were spared the raids.

## LAW/ARGUMENT

I.      First Amendment infringement and prosecutorial vindictiveness.

_____

[2] These pages are archived on the Wayback Machine which is an application of the Internet Archive. It is not submitted in this format as admissible evidence but to demonstrate the accessibility and availability of promotional efforts of other medical marihuana business in 2016 in the Lansing area.

A.      Basis of the claim.

Retaliation is discussed in Issue II but is explained here because the retaliatory aspects of the response to protected speech and the response to Mr. Trevino's utilization of court procedures to push back against the forfeitures informs the presumption of vindictiveness. No cases were located where First Amendment retaliation was the basis for a dismissal in a criminal case. In general, however, retaliation that is a motivating factor in government action is subject to judicial intervention. When that retaliation is in response to the exercise of constitutional or statutory rights, it becomes prosecutorial vindictiveness for which established precedent does authorize dismissal.

B.      Standards.

1.      First Amendment.

The Sixth Circuit has held that a plaintiff alleging First Amendment retaliation "must prove that 1) she engaged in protected conduct, 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and 3) the adverse action was taken at least in part because of the exercise of the protected conduct." *Siggers–El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 393 (6th Cir.1999) (en banc).

 The inquiry of "whether activity is 'protected' or an action is 'adverse' " is context-specific. *Thaddeus–X v. Blatter*, *supra*, at 388 (en banc).  A plaintiff in a civil rights case need not show he was actually deterred from exercising her right to free speech, but rather must show the actions were "capable of deterring a person of ordinary firmness from exercising his or her right[s]." *Id*. at 398. A chilling effect sufficient under this prong is not born of de minimis threats

or "inconsequential actions," but neither does the requisite showing permit "solely egregious retaliatory acts ... to proceed past summary judgment." *Id*. As noted above, the inquiry as to protected activity and adverse action is intensely context-driven *Thaddeus–X*, 175 F.3d at 388; *Holzemer v. Memphis*, 621 F.3d 512 (6th Cir. 2010).

*Gentile v. State Bar of Nev*., 501 U.S. 1030, 1034, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) ("There is no question that speech critical of the exercise of the State's power lies at the very center of the First Amendment."). See also, *Butterworth v. Smith*, 494 U.S. 624, 632, 110 S.Ct. 1376, 1381, 108 L.Ed.2d 572 (1990). Access to information regarding public police activity is particularly important because it leads to citizen discourse on public issues, "the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 145, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)); *Garrison v. Louisiana*, 379 U.S. 64, 77, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) (recognizing the "paramount public interest in a free flow of information to the people concerning public officials, their servants"). That information is the wellspring of our debates; if the latter are to be " 'uninhibited, robust, and wide-open,' " *Snyder*, 562 U.S. at 452, 131 S.Ct. 1207 (quoting *N. Y. Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)), the more credible the information the more credible are the debates.

Most of the cases cited above discuss the general retaliation analysis but the United States Supreme Court has held that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out, *Crawford–El v. Britton*, 523 U.S. 574, 592, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); see also *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (noting

that the government may not punish a person or deprive him of a benefit on the basis of his "constitutionally protected speech").

In *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), a unanimous Supreme Court held that where constitutionally protected speech is 'a "motivating factor' " in governmental retaliation, the adverse action is unconstitutional unless the same action would have been taken 'even in the absence of the protected conduct.' " *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568. This has led the Sixth Circuit to determine that the victim of the retaliation does not have to prove the absence of probable cause. *Barnes v. Wright*, 449 F.3d 709, 718-719 (6th Cir. 2006). Mr. Trevino concedes that it is still probative to the absence of or existence of retaliatory motive. *Hartman v. Moore*, 547 U.S. 250, 265–66, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006).

      2.      Prosecutorial vindictiveness.

In the criminal case context, a criminal prosecution resulting from the exercise of First Amendment rights is referred to as prosecutorial vindictiveness. In the instant case, Mr. Trevino exercised his First Amendment rights in two ways. First, he used social media and other forms of advertising to promote medical marihuana and advocated for persons to become cardholders through Hydroworld. He also used social media and other platforms to speak out against public officials who were seeking to frustrate the 2008 voter-initiated law. Second, he used his access to the courts to not only fight back against the seizures but then also to file lawsuits against government actors infringing his rights. It was only after he took these steps that the state drug teams increased the stakes by actually and finally seeking criminal charges and at the federal level to further increase the pressure on Mr. Trevino.

Normally, the doctrines relating to prosecutorial vindictiveness address situations such as reindictments on more serious charges in retaliation for exercising one's constitutional rights. *See* e.g. ***Blackledge v. Perry***, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), ***United States v. Wilson***, 639 F.2d 500 (9th Cir.1981). "Prosecutorial vindictiveness" is a term of art with a precise and limited meaning. The term refers to a situation in which the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights. ***United States v. Goodwin***, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982). In an obscenity case, a District Court in Tennessee adopted a D.C. Circuit Court's description of how a vindictive prosecution claim is analyzed.

> The Supreme Court has established two ways in which a defendant may demonstrate prosecutorial vindictiveness. First, a defendant may show "actual vindictiveness"—that is, he may prove through objective evidence that a prosecutor acted in order to punish him for standing on his legal rights. This showing is, of course, exceedingly difficult to make. Second, a defendant may in certain circumstances rely on a presumption of vindictiveness: when the facts indicate "a realistic likelihood of 'vindictiveness,' " a presumption will arise obliging the government to come forward with objective evidence justifying the prosecutorial action. If the government produces such evidence, the defendant's only hope is to prove that the justification is pretextual and that actual vindictiveness has occurred. But if the government fails to present such evidence, the presumption stands and the court must find that the prosecutor acted vindictively.
>
> ***United States v. Toushin***, 714 F.Supp 1452, 1458 (M.D. Tenn. 1989), citing ***United States v. Meyer***, 810 F.2d 1242, 1245 (D.C.Cir.1987) (citations omitted).

C.    Analysis.

1.    The federal prosecution generally.

The government's raids in 2011 alone produced quantities of marihuana, sales records, ledgers, cash, communications devices, interviews of associates and customers, and scores of

photographs and laboratory reports. The only effort at a criminal prosecution (Corbin) failed in state circuit court brought by the Attorney General's Office.[3]

The government raids in 2013 resulted in the same or more quantities of evidence, photographs, laboratory reports, interviews, and communications. This time, the government's efforts at forfeiture failed miserably across the board. In 2016, the State of Michigan passed legislation (instead of an initiative) to license and regulate medical marihuana. Whatever justifications the government may make, Mr. Trevino asserts that Attorney General Schuette, the drug teams, and the DEA were extremely concerned that Mr. Trevino could move into the licensed version of these laws.[4] After the federal search warrants were executed in May 2016, the agents invited local code compliance inspectors into the buildings without a warrant. In each building, not only was a red-tag placed on the building but the inspector had the electricity disconnected. This also resulted in a lawsuit against the inspectors and the City in state court. That lawsuit was dismissed but then a Sixth Circuit case for identical conduct by Lansing code inspectors was decided in the homeowners/tenants favor and a federal version of that lawsuit has been filed. See *Gardner v. Evans*, 920 F.3d 1038 (6th Cir. 2019), reh'g denied May 22, 2019 and *Trevino et al v. Blackburn et al*, West. Dist. #1:19-cv-349.

The drug team reports are replete with claims that the matter is under review by the Attorney General's Office, the U.S. Attorney's Office, and the DEA throughout 2012, 2013, 2014, and 2015. It is not until August 2018 that an indictment is finally handed down notwithstanding

---

[3] Corbin and three others were also charged in Ingham County from the TCM 2011 investigations. After two different judges dismissed the case on two separate occasions and multiple appeals by the Attorney General's office, the prosecution ended with a whimper when pleas to simple possession were made and accepted.
[4] Mr. Trevino himself would likely have been ineligible to be a licensee but he could have easily been an investor, organizer, manager, or consultant in the industry.

scores of raids or traffic stops, years of examining and compiling reports, photographs, and witnesses, and tens of thousands of pages of downloads from social media and communication devices over a seven-year period.

In ***United States v. LaDeau***, 734 F.3d 561 (6th Cir. 2013), a defendant charged with receiving child pornography successful moved for dismissal based on prosecutorial vindictiveness. LaDeau was charged in late 2010 or early 2011 and moved to suppress evidence which was granted in September 2011. This essentially precluded the government's case. In November 2011, the government obtained a superseding indictment alleging receipt of child pornography which carried a much more severe penalty. LaDeau then moved to dismiss and the District Court granted the motion.

The Sixth Circuit agreed that the presumption of vindictiveness applied and the government had failed to rebut it. The court took note of

- the government's case had been severely damaged and it needed to change its theory of the case to have any case at all.

- the "receipt conspiracy" could have been charged as a "possession conspiracy" and would have carried the same charge as the original possession charge but the government chose the former.

- there was a thirteen-month delay between the successful suppression motion and obtaining the superseding indictment. *Id*., at 565.

- the government had been in possession of the information used to support the superseding indictment when the case was originally charged. *Id.*, at 568.

2.    The superseding indictment.

The federal search warrants were executed on May 3, 2016. Mr. Trevino was indicted on July 25, 2018. R. 1, PageID#1. They used two tracking warrants on his vehicles in 2014. Government's pretrial statement summary, R. 23, PageID#56. They used two search warrants for Facebook records in 2015. *Id.* They executed five search warrants on physical locations on May 3, 2016. *Id.* They executed two search warrants on 48 electronic devices in January 2017. *Id.* On August 22, 2018, Mr. Trevino began filing his pretrial motions to suppress and a motion to quash due to the DEA's use of prohibited funds to pursue the investigation. R. 46, PageID#163; R. 62, PageID#285; R. 67, PageID#363; R. 68, PageID#425; R. 69, PageID#439, and R. 70, PageID#470.

The original indictment alleged a conspiracy from "in or about 2010 until in or about May 2016, in Ingham and Kent Counties. . . ." R. 1, PageID#1. On January 9, 2019 after all but one of Mr. Trevino's motions were resolved, the government filed a superseding indictment. This indictment expanded the scope of the indictment from "on or about 2010 until in or about December 2017, in Ingham and Kent Counties. . . ." R. 106, PageID#735. The superseding indictment added a count of manufacturing marihuana on April 17, 2014 in Kent County and maintaining a drug premises on Old 28th Street in Kent County on August 7, 2014.

The government learned nothing it did not already know between July 2018 and January 2019. The April 17, 2014 incident is contained in Grand Rapids Police Department's incident number 14-031144 and bears government Bates numbers GRPD 00001 – 000073.[5] GRPD 00001 – 00073 were disclosed in the government's initial disclosures on August 15, 2018. GRPD 00074 – 00374 consists of Facebook pages, evidence forms, and photocopies or photographs of all items seized from the building and vehicle. These were disclosed by the government on October 9, 2018.

---

[5] The file is only 72 pages and the missing page has not yet been located.

The August 7, 2014 incident was documented in Kent County Sheriff's Office incident number 14-053862. These were government Bates numbers KCS-00028-000040. The search warrants for August 7, 2014 were at Bates KCS-00068-75. The photographs for this incident were at Bates KCS-00106-177 and included a prepared cover sheet identifying them. These documents were all disclosed by the government on August 15, 2018.

Mr. Trevino will be able to show that the presumption of vindictiveness exists on these facts. The government will be unable to present evidence to rebut the presumption or to establish proper motivation. This will apply to both indictments leaving the property remedy a complete dismissal.

II.    Selective Enforcement.

In *United States v. Hazel*, 696 F.2d 473 (6th Cir.1983), the Sixth Circuit explained selective prosecution:

> [A] defendant asserting a selective prosecution ... "bears the heavy burden of establishing, at least prima facie, (1) that while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of his constitutional rights." 696 F.2d at 474 (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974) (emphasis supplied in *Hazel*)); see also *United States v. Silien*, 825 F.2d 320, 322 (11th Cir.1987).

The government cannot simply rely on the fact that TCM sent informants into Hydroworld in the spring of 2016 and purchased marihuana therefore the crime was established before the federal search warrants were obtained. TCM has become "in privy" with the federal government. They are "agents" of the government as far as that word is a legal term of art. TCM's selection of Mr. Trevino based on his exercise of First Amendment rights and cultural background taints this prosecution regardless of which prosecuting authority brings it.

The Sixth Circuit has applied a selective enforcement analysis as the result of equal protection claims in different contexts. In **United States v. Taylor**, 956 F.2d 572 (6th Cir. 1992) (en banc), the Sixth Circuit noted that selections for consensual interviews at airports based on race could give rise to a selective prosecution/equal protection defense.[6] In **United States v. Anderson**, 923 F.2d 450 (6th Cir. 1991), the Sixth Circuit actually separated vindictive and selective prosecution cases squarely into two separate doctrines.

> A prosecutor selectively prosecutes someone when three things occur. First, he must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. **Wayte**, 470 U.S. at 608 n. 10, 105 S.Ct. at 1531 n. 10. Second, he must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to. **Wayte**, 470 U.S. at 609, 105 S.Ct. at 1531–32.
>
> A prosecutor vindictively prosecutes a person when he or she acts to deter the exercise of a protected right by the person prosecuted. **United States v. Andrews**, 633 F.2d 449, 453–55 (6th Cir.1980), cert. denied, 450 U.S. 927, 101 S.Ct. 1382, 67 L.Ed.2d 358 (1981). A person who claims he has been vindictively prosecuted must show that the prosecutor has some "stake" in deterring the petitioner's exercise of his rights, and that the prosecutor's conduct was somehow unreasonable. *Id.* **Anderson**, at 453-454.

While a selective enforcement claim in **Anderson** was not sustained, the discussion left no doubt that it is a valid claim when a defendant is able to satisfy his burden under the Supreme Court's selective enforcement test found in **Wayte v. United States**, 470 U.S. 598, 608 n. 10, 609, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

In **Farm Labor Organizing Committee v. Ohio State Highway Patrol**, 308 F.3d 523, (6th Cir. 2002), a Hispanic couple were stopped for an equipment violation. The trooper admitted that

---

[6] The original panel decision in **Taylor**, 917 F.2d 1402 (6th Cir. 1990), had actually determined the seizure of Mr. Taylor to be unconstitutional because it was based on race. In the en banc version, all three panel members and one additional judge dissented from the eight-member majority en banc opinion which did not reach the race issue at all.

he questioned them about their immigration status based on their race and limited English. He seized their valid immigration cards and did not return them for four days. The Sixth Circuit found that the targeting for questioning about immigration status based on race was a violation of equal protection.

In **United States v. Avery**, 137 F.3d 343, 349 (6th Cir.1997), the concept of "pre-contact stage" decision making was discussed. The Sixth Circuit held that "[a] citizen's right to equal protection of the laws, however, does not magically materialize when he is approached by the police. Citizens are cloaked at all times with the right to have the laws applied to them in an equal fashion—undeniably, the right not to be exposed to the unfair application of the laws based on their race." **Avery**, at 353 citing **United States v. Mendenhall**, 446 U.S. 544, 550, 100 S.Ct. 1870, 64 L.Ed.2d 1980) (quoting **Katz v. United States**, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967)).

In the instant case, there were scores of medical marihuana facilities in the Lansing, Jackson, and Grand Rapids areas. JNET and TCM specifically targeted Hydroworld. As noted above, Pure Options, owned by a non-Hispanic, was one of many others which advertised on the internet and social media platforms. All of them sold medical marihuana. Mr. Trevino will present evidence regarding the following facilities and others at the hearing:

1. Star Buds, 2012 N. Larch Street, Lansing, MI 48906

2. Greenhaus Cannabis, 3141 Page Ave., Jackson, MI 49203.

3. Edgewood Wellness, 134 E. Edgewood Blvd., Lansing, MI

4. Thrive Provisioning Center, 6007 Ann Arbor Rd., Jackson, MI.

5. People's Choice, 3435 E. Michigan Ave., Jackson, MI

6. Club Medz, 2840 E. Court St., Flint, MI

7. Hemphill Wellness Center, 3365 Associates Drive, Burton, MI

8. Kind, 2201 E. Michigan Ave., Lansing, MI

9. The Provision Center, 4920 Plainfield Ave. NE, Suite B, Grand Rapids, MI

10. First Class Wellness, 4215 N. Grand River Ave., Lansing, MI

11. Michigan Medical Marijuana Club, 6046 S. Cedar St., Suite B, Lansing, MI

12. The Herbal Connection, 4314 S. Cedar St., Lansing, MI

13. Jackson County Compassion Club, 1620 E. Michigan Ave., Jackson, MI

14. Mother Nature's Care Club, 2008 Lansing Ave, Jackson, MI (9722-GOT-POT)

15. Holistic Earth, LLC, 709-A S. State Rd., Davison, MI

16. Michigan Organic Solutions, 3549 Dort Highway, Suite 106, Flint, MI

17. Green Light District, 3102 S. Dort Highway, Flint, MI

18. Guaranteed Relief, 4621 Saginaw St., Burton, MI

19. Great Lakes Helping Hands, 4160 M-72 East, Williamsburg, MI

20. 809 Provisioning Center, 809 S. Garfield Ave., Traverse City, MI

This is just a brief list of the provisioning centers that were available in 2015 and 2016. Mr. Trevino believes that he is the only Hispanic owner among these listed. He will compile and present – to the best of his ability – the racial makeup of the owners or managers specifically. Based upon his associations and contacts within the medical marihuana communities, police involvement with these dispensaries was minor or non-existent. There were certainly no federal prosecutions of them.

While his exercise of First Amendment rights supports the elements of both selective enforcement and vindictive prosecution, his heritage supports the elements of selective enforcement.

## CONCLUSION

The elected administration and the Michigan State Police did not like the 2008 voter initiative for medical marihuana. With a new regime taking office in 2011, enforcement escalated. Mr. Trevino was an outspoken advocate for medical marihuana, assisted thousands of people in obtaining their patient and caregiver cards, and created expansive networks among caregivers and patients. Mr. Trevino's Hydroworld was only one of many medical marihuana businesses in Lansing, Jackson, Flint, and Grand Rapids. But because of his outspoken and critical remarks of elected and appointed officials, he was the target of numerous raids and traffic stops over a long period of time. The only prosecution ever initiated against him – in Kent County – was dropped before the preliminary examination could be conducted. The only prosecutions against associates of Hydroworld resulted in either acquittals, dismissals, or misdemeanor charges. When Mr. Trevino began to fight back on the forfeitures and file lawsuits for the seizures, he was handed a federal indictment. The presumption of vindictiveness is strong.

Mr. Trevino is Hispanic. To his knowledge, the only Hispanic owner of a medical marihuana center. To his knowledge, he is the only one targeted for multiple raids and certainly the only one subjected to a federal prosecution. The selective enforcement evidence is equally strong.

## RELIEF REQUESTED

WHEREFORE, Mr. Trevino respectfully requests that this Court grant an evidentiary hearing on this motion and dismiss all counts in the superseding indictment against Mr. Trevino.

6/24/2019                                          */s/ J. Nicholas Bostic*
Date                                               J. Nicholas Bostic P40653
                                                   Attorney for Defendant Trevino

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE

This brief complies with the type-volume limitation of W.D. Mich. LCrR 47.1(b)(i) because this brief contains 6,040 words and was prepared in a proportionally spaced typeface using Microsoft Word (Office 365) in 12-point Times New Roman font.

*/s/ J. Nicholas Bostic*
Attorney for Defendant Trevino

Dated: June 24, 2019

## CERTIFICATE OF SERVICE

J. Nicholas Bostic certifies and says that on the 24th day of June, 2019, he served a copy of Defendant's Motion to Dismiss on Joel Fauson, Assistant U.S. Attorney, Attorney for Plaintiff at the address above by using the Court's electronic case filing system which will send notice to all counsel of record. I declare that the above statement is true to the best of my information, knowledge and belief.

6/24/2019                                  */s/ J. Nicholas Bostic*
                                            J. Nicholas Bostic P40653
                                           Attorney for Defendant Trevino

UNITED STATES OF AMERICA

IN THE WESTERN DISTRICT OF MICHIGAN

United States of America,                          File No. 1:18-cr-166
      Plaintiff,

        v.                                         Hon. Paul L. Maloney
                                                   U.S. District Court Judge
Daniel Dario Trevino (D-1)
      Defendant.
_____/

| | |
|---|---|
| Joel S. Fauson | J. Nicholas Bostic P40653 |
| Assistant United States Attorney | Attorney for Defendant Trevino |
| P.O. Box 208 | 909 N. Washington Ave. |
| Grand Rapids, MI 49501-0208 | Lansing, MI 48906 |
| 616-456-2404 | 517-706-0132 |

_____/

## INDEX OF ATTACHMENTS TO DEFENDANT DANIEL TREVINO'S (D-1) MOTION TO DISMISS

1. Memorandum regarding new implementation approach.

2. TCM journal entries showing review - 2011.

3. JNET journal entries showing review - 2011.

4.  Falsified medical records of undercover officers.

5. JNET journal entries showing review – 2013.

6. Political flyer.

7. Rejection of forfeiture cases by Ingham County.