UNITED STATES OF AMERICA

IN THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| United States of America,<br>    Plaintiff, | File No. 1:18-cr-166 |
| v. | Hon. Paul L. Maloney<br>U.S. District Court Judge |
| Daniel Dario Trevino (D-1)<br>    Defendant. | RESTRICTED ACCESS |
| Joel S. Fauson<br>Assistant United States Attorney<br>P.O. Box 208<br>Grand Rapids, MI 49501-0208<br>616-456-2404 | J. Nicholas Bostic P40653<br>Attorney for Defendant Trevino<br>909 N. Washington Ave.<br>Lansing, MI 48906<br>517-706-0132<br><br>Stewart Friedman P46039<br>Co-counsel for Defendant Trevino<br>26777 Central Park Blvd, Suite 300<br>Southfield, MI 48076-4172<br>248-228-3322 |

**DEFENDANT'S MOTION FOR VARIANCE AND SENTENCING MEMORANDUM**

    Mr. Trevino's offenses of conviction are

    - **Count 1**: Conspiracy to Manufacture, Distribute, and Possess with Intent to Distribute 1,000 Grams or More of Marijuana 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(B)(vii).

    - **Counts 2, 6, 8, 9, and 10**: Maintaining a Drug-Involved Premises 21 U.S.C. § 856(a)(1), and (b).

    - **Counts 3, and 4**: Manufacture of Marijuana 21 U.S.C. § 841(a)(1), and (b)(1)(D)

    - **Count 5**: Possession with Intent to Distribute Marijuana 21 U.S.C. § 841(a)(1), and (b)(1)(D).

    - **Count 7**: Manufacture of 100 Plants or More of Marijuana 21 U.S.C. § 841(a)(1), and

(b)(1)(B)(vii)

The punishment for Count 1 imposes a mandatory minimum of 5 years with a maximum of 40 years and a $5,000,000.00 fine. 21 U.S.C. §841(b)(1)(B)(vii).

A "departure" from the recommended range is a slippery concept after *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).[1] This motion is not being submitted as a motion for a "departure" under USSG §5K1.1 because only the government can make such a motion and the imposition of a sentence outside of the range is now discretionary. Because Mr. Crump anticipates that the government will file a motion pursuant to USSG §5K1.1, Mr. Crump will address certain aspects of why the Court should go below the recommended range due to his assistance.

In *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), the Supreme Court rejected any standard of review that required a district court to proportionally justify a departure from the advisory guideline. The Court held that such a rule would be inconsistent with *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). As the factors of 18 U.S.C. §3553 are applied, a district court may not presume that the guidelines range is reasonable, must make an individualized assessment based on the facts presented, and consider the extent of the deviation to make certain it matches the justifications. The last part of the task is to adequately explain the chosen sentence to, in part, promote the perception of fair sentencing. *Gall*, at 50.  See also, *Nelson v. United States*, 555 U.S. 350, 352, 129 S.Ct. 890, 891-82, 172 L.Ed.2d 719 (2009) (district courts should not attach a presumption of reasonableness to a within-Guidelines range sentence).

---

[1] Adequately described by the Hon. Boyce F. Martin, Jr. as "trying to herd bullfrogs into a wheelbarrow." *United States v. McBride*, 434 F.3d 470, 474 (6th Cir. 2006).

This leaves the factors of 18 U.S.C. §3553(a) as the tool for imposing an appropriate sentence. These factors are discussed below.

## LAW/ARGUMENT

A.	General and guideline considerations.

The four entries of 18 U.S.C. §3553(a)(2) are referenced as both "purposes" of a sentence and listed as part of a comprehensive list of "factors" to be considered as reflected in the title of the subsection. Those four considerations therefore drive the assessment of the Court's compliance with a sentence "sufficient, but not greater than necessary" to accomplish those purposes and justify the "need" for the particular sentence imposed.

The four goals of a sentence pursuant to §3553(a)(2) are (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with rehabilitative options. Other facts to be considered are the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentences available, the sentencing range of the (now non-mandatory) guidelines, pertinent policy statements, the need to avoid unwarranted sentencing disparity, and the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a)(1) (3)-(7). Neither the statute itself nor ***Booker*** suggests that any one of these factors is to be given greater weight than any other factor. All of these factors, however, are subservient to Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

### *1. The offense and the offender.*

The context of the rapidly changing landscape of marihuana laws at the state level cannot be ignored. Congress has chosen to disregard the advances in science regarding the benefits of

marihuana in certain conditions while many states have enacted laws for medicinal purposes and recreational use for adults. The nature of the offense – regardless of what the government alleges – is in the medical marihuana context. Mr. Trevino's history of controlled substance offenses is extremely old. His other involvements primarily resulted in acquittals or dismissals and some of them were the result of disputes with significant others.

### *3. The kinds of sentences available.*

Incarceration and supervised release are available along with monetary penalties. Probation is not an option pursuant to the guidelines and by statute.

### *4. Recommended guideline range.*

The guidelines for marihuana were developed in 1987. They simply do not reflect the majority view (especially in Michigan) of marihuana. Michigan voters had to develop medical marihuana through a voter initiative in 2008 due to legislative inaction. Michigan voters again used the initiative process to enact recreational possession and use in 2018. The Michigan Legislature finally saw the financial opportunity and in 2016 passed legislation for the cultivation, transportation, testing, and retail of medical marihuana. Otherwise, the executive branch had a visceral negative reaction to the voter initiatives. In the end, the federal guidelines are inflated in this case by the way the government structured its investigation and charging of Mr. Trevino. They simply do not reflect the reality of marihuana in 2019.

### *5. Policy statements.*

Mr. Trevino has not identified any pertinent policy statements.

### *6. Unwarranted sentencing disparities.*

All three co-defendants entered pleas and cooperated. A comparison for disparity is not warranted.

*7. Restitution.*

This factor is not applicable in this case.

B.      The need for a particular sentence.

The second factor of §3553(a) was omitted from the above discussion to be given its own treatment due to its importance. Mr. Trevino asserts that a sentence of the mandatory minimum satisfies the mandate of §3553(a) and the purposes of (a)(2).

*(A) Reflecting the seriousness of the offense, respect, and just punishment (retribution).*

As noted above, the legal landscape of marihuana has changed dramatically over the time span of the alleged conspiracy. It has continued to change even after the indictment in the summer of 2018 because in the fall of 2018, Michigan voters approved an initiative that would have made possession of the amounts in every single sale at Hydroworld completely legal (to an adult) under state law. The "priorities" listed in the 2011 and 2013 DOJ memos are absent. There was no firearm, there were no minors involved, the were no injuries and each Hydroworld employee may have had an affirmative defense or immunity under state law for each transaction.

*(B) Deterrence.*

This has been interpreted as a need for both general deterrence and specific deterrence. Mr. Trevino asserts that the mandatory minimum is designed to accomplish that very goal. As for general deterrence, that is a very complicated issue and rendered even more difficult to assess due to the changing laws. Even the mandatory minimum will likely cause many members of the public to wonder why the government is pursing this case at all.  The fact that he was charged and required to go through the process with the accompanying risks serves some deterrent effect. Collateral consequences are typically not sufficient (felony conviction, loss of certain attributes of citizenship, embarrassment, etc). But the fear of incarceration and the anxiety of the process itself

certainly has some deterrent effect.

*(C) Protecting the public from further crimes of the defendant.*

The government has and will continue to make much of Hyrdroworld's continued operation after May 2016. As noted before, Mr. Trevino was precluded from presenting evidence as to why he believed he was legal under state law. The public – at least in Michigan – can engage in the very behavior that was the subject of this indictment lawfully under state law. Scores of other medical marihuana facilities were operating with impunity to both state and federal officials in the greater Lansing area in 2016. It is simply not clear how the Court will measure the deterrent effect under present circumstances.

*(D) Providing needed education or vocational training, medical care or other correctional treatment.*

Mr. Trevino has worked as a laborer in the construction industry. The presentence report properly sets out his employment history. He was taking classes in auto body repair at first and then became interested in working on electric cars. He is an eager learner and will obtain skill sets with or without court orders. He presently has a lump of unknown origin in his groin that needs assessment and care. Even though he was in the medical marihuana business and had a patient card, he has refrained from use and addiction is not an issue.

C.	The mandatory minimum in this case is a reasonable sentence.

Mr. Trevino asserts that a variance from the guidelines to the mandatory minimum of 5 years is appropriate based on the circumstances of the case. The specific reasons are as follows:

- the changing legal landscape of marihuana.

- the selection of Mr. Trevino for prosecution out of scores of medical marihuana operations.

- the sentencing entrapment that occurred based on the structure of the indictment. The Sixth Circuit has recognized that sentencing entrapment can be a basis for downward departure. *United States v. Taylor*, 696 F.3d 628 (6th Cir. 2012); *United States v. Jones*, 102 F.3d 804 (6th Cir. 1996).

- the political nature of the state police investigations into Mr. Trevino based on his public comments against state Attorney General Bill Schuette.

- the fraud perpetrated by the undercover officers in 2011 by using fake medical records and lying about their medical conditions.

- the government seizure of records from Mr. Trevino for a six-year period and the method of disclosures used by the government in the course of this case.

- the multiple Fourth Amendment violations used by various police agencies which resulted in the failure of numerous forfeiture cases, and civil rights action that was settled, and the return of property on multiple occasions.

D.   Legal basis for a downward variance.

In *United States v. Rosenthal*, 266 F.Supp.2d 1091 (N.D. Cal. 2003), convictions for manufacturing and conspiracy to manufacture marihuana netted a one-day sentence which was upheld on appeal. *United States v. Rosenthal*, 454 F.3d 943, 950-951, n. 8 (9th Cir. 2006).

Mr. Rosenthal's drug quantity (statutory) was "at least 100 plants" as found by the jury. The weight equivalency was 10 kilograms. A seizure of 673 plants produced an equivalency of 67.3 grams (which included the 100 as found by the jury). The government argued for a higher amount but could not meet its burden of proof as to exactly who was responsible for plants seized at other locations. In the instant case, Mr. Trevino had some legal connection to the locations but evidence exists to establish that others actually owned some of the plants. The main

point of relying on *Rosenthal* for this concept is that the district court appropriately placed the burden on the government and did not simply take the presentence report's bald assertions. *Rosenthal, supra*, pp. 1093-1094.

*Rosenthal* also discussed USSG §3E1.1, acceptance of responsibility even though the case was a jury trial. Mr. Rosenthal genuinely believed he had been appointed to grow marihuana by the City of Oakland and had immunity. The jury did not accept this argument and convicted him. The Court in *Rosenthal* recognized that where a defendant admits the basic elements but maintains some type of legal defense. Comment 2 of §3E1.1 leaves open the ability to obtain this reduction even if a trial occurs. The instant case is unique because of the successes Mr. Trevino had against the state authorities that sought to prosecute him or his employees, his successes in various forfeiture arenas, and the treatment of his business by the City of Lansing. He admitted his connection to the Hyrdroworld facilities. *Rosenthal*, *supra*, at 1095 – 1096.

The question for a variance becomes whether a case is "unusual." While Rosenthal used "departure," Mr. Trevino asserts that the analysis for a variance is similar. Relying on *Koon v. United States*, 518 U.S. 81, 85, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), the departure factors were identified as:

"1) What features of this case, potentially, take it outside the Guidelines' 'heartland' and make of it a special, or unusual, case?

2) Has the [Sentencing] Commission forbidden departures based on those features?

3) If not, has the Commission encouraged departures based on those features?

4) If not, has the Commission discouraged departures based on those features?"

*Rosenthal*, at 1098, citing *Koon*, 518 U.S. at 95, 116 S.Ct. 2035 (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir.1993)).

The **Rosenthal** Court then relied specifically on the state law, the Oakland ordinance, Rosenthal's good faith belief, and the openness of his behavior to conclude that it was not dealing with an ordinary drug case and that a departure was reasonable.

E.      Mr. Trevino's standing in the community and family support.

Attachment 1 consists of 20 letters from family and acquaintances of Mr. Trevino. Most importantly are the letters from Ms. Yoder and Ms. Barker. They are the significant others involved in the purported domestic disputes mentioned in the presentence investigation report.

Attachment 2 is a letter from Mr. Trevino to the Court for consideration.

## CONCLUSION

WHEREFORE, Mr. Trevino respectfully requests this Honorable Court consider all of the factors of 18 U.S.C. §3553(a), the unique nature of this case, his employment history, his social support system, and his cooperation and impose a sentence at the mandatory minimum.

01/13/2020                                      */s/ J. Nicholas Bostic*
                                                J. Nicholas Bostic P40653
                                                Attorney for Defendant Trevino

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE

This brief complies with the type-volume limitation of W.D. Mich. LCrR 47.2(b)(i) because this brief contains 2271 words and was prepared in a proportionally spaced typeface using Microsoft Word (Office 365) in 12-point Times New Roman font.

*/s/ J. Nicholas Bostic*
Attorney for Defendant Trevino

Dated: January 13, 2020

## CERTIFICATE OF SERVICE

J. Nicholas Bostic certifies and says that on the 13th day of January, 2020, he served a copy of Defendant Trevino's Motion for Downward Variance and Sentencing Memoranda on Joel Fauson, Assistant U.S. Attorney, Attorney for Plaintiff at the address above by using the Court's electronic case filing system which will send notice to all counsel of record. I declare that the above statement is true to the best of my information, knowledge and belief.

01/13/2020                                      */s/ J. Nicholas Bostic*
                                                 J. Nicholas Bostic P40653
                                                 Attorney for Defendant Trevino